**DELMARVA POWER & LIGHT,**
**Defendant below, Appellant,**

v.

**Charlotte STOUT, Plaintiff**
**below, Appellee.**

Supreme Court of Delaware.

Submitted May 13, 1977.

Decided Nov. 22, 1977.

Wayne N. Elliott, of Prickett, Ward, Burt & Sanders, Wilmington, for defendant below, appellant.

Albert L. Simon, Wilmington, for plaintiff below, appellee.

Before HERRMANN, Chief Justice, MARVEL, Chancellor and BROWN, Vice Chancellor.

HERRMANN, Chief Justice:

This is an appeal by the defendant, Delmarva Power and Light Company, in a personal injury action which arose when the plaintiff struck her head against a metal box attached by the defendant to one of its utility poles.

The incident occurred at about 9:30 p. m., during a rainstorm, after the plaintiff left her brother's house, located on the southerly side of 14th Street, near Union Street, in the City of Wilmington. Upon leaving the house, the plaintiff crossed 14th Street to enter her sister's car, parked on the northerly side of 14th Street and facing westward in the middle of the block. She stepped onto the curb and proceeded around the utility pole in order to enter on the passenger side; in so doing, she struck her head against the box and was stunned. The box, containing an electrical-load meter, was attached to the pole at a height of 70″ from the ground; it measured 20″ in height, and 10½″ in depth.

Immediately following the accident and for some time thereafter, the plaintiff experienced nausea, severe headaches, and blurred vision. She eventually regained the sight in her left eye but the vision in her right eye deteriorated until she was only light-sensitive in that eye. The plaintiff, who was an employed licensed practical nurse before the accident, has not returned to work. Alleging that the defendant was negligent in the placement of the box on the pole, the plaintiff sought damages for her medical expenses, loss of earnings, and resulting blindness. The jury returned a verdict in favor of plaintiff in the amount of $145,000. The defendant moved for a new trial; the Trial Court denied the motion and this appeal followed. We affirm.

## I.

We are first asked to rule that the Trial Court erred in not directing a verdict for the defendant.

## A.

It is contended that the plaintiff did not establish a *prima facie* case of negligence in that the applicable standard of care, which the defendant allegedly violated in the placing of the metal box upon the pole, was not adequately proven. According to the defendant, such standard can be established only by showing customary accepted practices or by expert testimony, both of which the plaintiff failed to offer. We disagree.

■ The plaintiff's burden was to establish that the defendant failed to exercise the care of a reasonably prudent person under all of the circumstances.

■ In the absence of a standard fixed by judicial decision or legislative enactment, the jury itself must define and apply that standard of care. *Restatement, Torts* II § 285. In *Robelen Piano Company v. DiFonzo*, Del.Supr., 169 A.2d 240, 244–5 (1961), this Court stated that:

"The standard of care required of all defendants in tort actions is that of a reasonably prudent man. That standard, however, is not a definite rule easily applicable to every state of facts. The details of the standard, of necessity, must be formulated in each particular case in the light of its peculiar facts. In each case the question comes down to 'what a reasonable man would have done under the circumstances.' In close or doubtful cases, . . . that question is to be determined by the jury."

■ In a particular case, "what a reasonable person would do" may be established through the aid of evidence of custom, *Suburban Propane Gas Corp. v. Papen*, Del. Supr., 245 A.2d 795 (1968), or through the aid of expert testimony, see, e. g., *Fitzmaurice v. Flynn*, Conn.Supr., 167 Conn. 609, 356 A.2d 887 (1975); *Densler v. Metropolitan Edison Co.*, Pa.Super., 235 Pa. Super. 585, 345 A.2d 758 (1975), but such evidence is neither always necessary nor controlling and we hold such evidence was not necessary or controlling in the instant case.

Evidence of custom is never controlling, *Honolulu Limited v. Cain,* Md.Supr., 244 Md. 590, 224 A.2d 433 (1966), and expert testimony is only relevant when the matter in issue is not one of common knowledge. See *Robelen Piano Co. v. DiFonzo,* supra, *Ginn v. Penobscott Co.,* Me.Supr., 334 A.2d 874 (1975); *Cutroneo v. F. W. Woolworth Co.,* R.I.Supr., 112 R.I. 696, 315 A.2d 56 (1974). Because it appears in the instant case that there are no industry-wide standards for the placing of boxes on utility poles, and because the location of a meter box on a utility pole in a residential metropolitan area is not a determination requiring special knowledge, we conclude that such testimony was not essential to the plaintiff's cause.

On a motion for directed verdict by the defendant, the evidence must be viewed in the light most favorable to plaintiff. *Rumble v. Lingo,* Del.Super., 1 Storey 417, 147 A.2d 511 (1958). The Trial Court found, and we agree, that there was a factual question as to whether all ordinary measures were taken by the defendant to protect the public; and, further, that the evidence was sufficient to warrant the conclusion that the defendant failed to conduct itself as a reasonably prudent person in selecting the location and placement of the box: the box was placed on a pole next to a sidewalk used for public pedestrian traffic, at a level below ordinary height, beneath a tree of heavy foliage, and without adequate warning devices. It is obvious, therefore, that the plaintiff made a showing of breach by the defendant of the reasonable-man standard of care adequate to withstand the motion for directed verdict.

### B.

The defendant also contends that the Trial Court erred in not directing a verdict in its favor because plaintiff was contributorily negligent as a matter of law. Pointing to evidence that only her forehead, and no other part of her face or head, struck the box, the defendant claims that the conclusion is inescapable that plaintiff negligently failed to look straight ahead but, rather, was prevented from noticing the box by keeping her head down when hurrying in the rain to enter the car. It is asserted that had she kept a proper lookout, she would have seen the box. The plaintiff, on the other hand, testified that she was looking straight ahead but could not see the box when she struck it because it was concealed behind the pole and because of the darkness of the area at night.

Whether plaintiff acted as a reasonably prudent person under all these circumstances was a question of fact for the jury to determine; there was sufficient evidence to support their determination that plaintiff was not contributorily negligent.

\* \* \* \* \* \*

There was no error in the Trial Court's denial of a directed verdict.

### II.

It is contended that the verdict of $145,-000 was excessive as a matter of law, considering that the total special damages awarded, including medical expenses and loss of earnings, throughout the remainder of the plaintiff's work-life, amounted to $43,000. One basis for the verdict undoubtedly was that the jury was permitted to award damages for permanent damage to the plaintiff's eyesight. The defendant argues that the Trial Court erred in submitting this question to the jury because the plaintiff presented no credible evidence as to blindness.

The Court will not set aside a verdict unless it is so grossly excessive as to shock the Court's conscience and sense of justice, and unless the injustice is clear. *Riegel v. Aastad,* Del.Supr., 272 A.2d 715 (1970). Because we find that there was credible evidence as to blindness, we conclude that the verdict is not shocking or unjust.

The underlying problem here is whether the Court should have stricken the testimo-

ny of Dr. Heather that there was a connection between the accident and the eye problem. He testified that a circulatory insufficiency, caused by the injury, led to the blindness suffered by plaintiff. The defendant contends that such opinion should not have been permitted because there was no factual basis for it. It is argued that Dr. Heather, a doctor of physical medicine, was not an ophthalmologist and neither examined the plaintiff's eyes nor consulted with any doctor who had; that his opinion was, therefore, of a hypothetical nature which must be predicated upon established facts. The argument goes on that since the only factual basis for Dr. Heather's opinion was the finding of circulatory insufficiency which an ophthalmologist, who made that finding, testified had no relation to the blindness, Heather's opinion evidence should not have been submitted to the jury. The defendant concludes on this point that the only evidence on blindness submitted to the jury should have been the opinions of the two ophthalmologists who testified that the cause of the blindness was the plaintiff's glaucoma, a progressive condition.

■ It is immaterial that Dr. Heather was not a specialist in ophthalmology. It is settled in Delaware (and elsewhere) that an experienced practicing physician is an expert, and it is not required that he be a specialist in the particular malady at issue in order to make his testimony as an expert admissible. *Drucker v. Philadelphia Dairy Products, Inc.,* Del.Super., 5 W.W.Harr. 437, 166 A. 796 (1933), *Board of Public Education in Wilmington v. Rimlinger,* Del.Supr., 232 A.2d 98 (1967). The record indicates that, as a specialist in physical medicine, Dr. Heather had considerable experience and expertise in the effect of trauma upon the central and peripheral nervous systems, including the optic nerve. There is evidence that, immediately following the accident, the plaintiff experienced blurred vision and pain in the temple and right eye, and that

her vision thereafter diminished in one eye until she had only light perception. Dr. Heather, who treated the plaintiff from the time of the injury, testified that, in his opinion, the blow stretched the optic nerve with consequent damage to the blood supply, causing the plaintiff's loss of vision. There was no error in the submission to the jury of this evidence of blindness and the causation thereof.

### III.

■ It is contended that the Trial Court erred in not allowing the defendant to introduce as evidence of community and industry standards of care 13 photographs of utility boxes mounted on poles in various locations in Wilmington. The Trial Court refused admittance because the boxes shown in the photographs were located on more exposed and visible street corner locations than the box in the instant case.

The general rule as to admissibility of photographs is that their admission is within the discretion of the Trial Court, and a ruling thereon is not ordinarily reversible unless there has been a manifest abuse of discretion. E. g., *Killary v. Burlington-Lake Champlain Chamber of Commerce, Inc.,* Vt.Supr., 123 Vt. 256, 186 A.2d 170 (1962). We find no such abuse of discretion here.

■ Error is also claimed in that the Trial Court barred testimony by an employee of the defendant on industry standards of care. On voir dire, the witness admitted that there were no industry-wide standards. This contention is groundless.

### IV.

Finally, as to the Trial Court's charge to the jury, the defendant contends that the Trial Court erred: (1) in instructing the jury on the defendant's standard of care as to the height of the box;[1] (2) by refusing to give the defendants "step-in-the-dark"

---

1. The relevant portion of the Trial Court's charge was:

". . . Thus, in this case, if you determine that Delmarva in the placing of a metal box

prayer;[2] and (3) by refusing to give the defendant's "urban impediments" charge.[3]

First, there was enough information in the record to warrant the charge concerning the height of the box. Second, *Maher v. Voss,* Del.Supr., 9 Terry 45, 98 A.2d 499 (1953), on which defendant relies, stands for the proposition that the "step-in-the-dark" instruction should be given "where a person enters a completely dark opening on unfamiliar premises." This does not describe the situation in the instant case where the premises were not unfamiliar to plaintiff and there was no entrance into a completely dark opening. Finally, in *Hagan v. Washington Suburban Sanitary Com'n,* Md.Ct.App., 20 Md.App. 192, 314 A.2d 699 (1974), on which the defendant bases his requested "urban-impediments" charge, it was held that the plaintiff was contributorily negligent when he fell over the 3 foot tall, red and white fire hydrant located on an illuminated portion of the sidewalk, a step or two from the entrance of a restaurant open and doing business. That situation is too dissimilar with the situation in the instant case to require further distinction.

We conclude that the defendant has failed to demonstrate reversible error in the instructions to the jury.

\*    \*    \*    \*    \*    \*

Affirmed.

---

upon the pole in question placed that box in such a location and at such a height and under such lighting conditions as were reasonably apparent to it or to be expected by it so as to create a hazardous or dangerous condition to members of the public using the pedestrian passageways adjacent to that pole, then such actions on the part of Delmarva would be negligent. And if you determine that such negligence proximately caused Plaintiff's injuries, and if Plaintiff herself is free of contributory negligence, then your verdict should be for the Plaintiff, Mrs. Stout."

The defendant objected as follows:

"I except to your Honor's charging the jury on the Defendant's duty in relation to the height of this box as well as the Defendant—Well, first the height of this box. In order to prove a duty, the Plaintiff has the burden of presenting expert testimony as to what the duty is. There was no such testimony so, therefore, there was no basis for that charge."

2. The "step-in-the-dark" prayer sought by the defendant was:

"In connection with the defendant's claim that the plaintiff failed to keep a proper lookout, I charge you that it is the duty of every person to watch where he is walking and to maintain a proper lookout for his own safety. The duty to look carries with it the duty to see that which is in plain sight to be seen. However, you have heard the testimony that this injury occurred at night time at a time when it was raining. It is a rule of law that a person, who comes into a situation where a condition of darkness renders the use of his eye sight ineffective or less than normally effective to define his surroundings, is not justified, in the absence of any emergency, in proceeding further, without first finding out where he is going and what may be the obstruction to his safe progress or passage. Under those circumstances, he is under an obligation to proceed cautiously and deliberately.

"If you find that Mrs. Stout's vision was impeded by darkness and rain, and that she did not, as a result thereof, proceed cautiously and deliberately, and if you find further that this failure was a proximate cause of the accident, then she cannot recover and you must return a verdict for the defendant."

3. The "urban impediments" charge sought by the defendant was:

"In proceeding onto a public area an ordinarily prudent person should anticipate impediments to his progress as a fact of modern life e. g. public lighting and utility fixtures, fire alarms, call boxes and fire hydrants." *Hagan v. Washington Suburban Commission,* Md.Ct.App. [20 Md.App. 192], 314 A.2d 699 (1974).

"In this case, Mrs. Stout was not free to assume that there were no impediments in the area where her sister's car was parked. While she was under no duty to anticipate negligence, she was under a duty as a reasonably prudent person to anticipate the possibility of objects being placed upon utility poles."