James I. VALN, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 81-79.

United States District Court, D. Delaware.

Sept. 3, 1982.

Lee C. Goldstein, Balick & Yucht, Wilmington, Del., David Rudovsky, Kairys, Rudovsky & Maguigan, Philadelphia, Pa., for plaintiff.

Joseph J. Farnan, Jr., U. S. Atty., John X. Denney, Jr., Asst. U. S. Atty., Wilmington, Del., for defendant.

OPINION

STAPLETON, District Judge:

James Ivory Valn instituted this lawsuit under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680 to obtain redress for injuries he allegedly suffered as a result of being held against his will in the United States Army. Valn alleges that he enlisted in the Delaware National Guard; that subsequently he enlisted in the United States Army; that he was honorably discharged from the Army; that this discharge terminated all obligations arising from his enlistment in the Delaware National Guard; that he protested when the Delaware National Guard called him up for active duty training; that he thereafter refused to participate in National Guard drills; and that, as a result of that refusal, he was negligently and wrongfully called

into service in the United States Army. Valn also alleges that he remained in the service, despite his persistent protests, until an Army jurisdictional inquiry determined that the Army was without jurisdiction over him[1] and ordered him administratively discharged on August 7, 1979. I accept all of these allegations as true for purposes of the government's motion to dismiss for lack of jurisdiction, Rule 12(b)(1), Fed.R.Civ.P., and for failure to state a claim upon which relief may be granted, Rule 12(b)(6), Fed.R. Civ.P.

The government proffers three grounds for dismissal. First, it contends that Valn's cause of action—if any—against the United States accrued no later than September 10, 1974, the date on which the Delaware National Guard recalled him for active duty training. Accordingly, the government asserts that Valn failed to comply with the two year limitations period of 28 U.S.C. § 2401(b), thus depriving this Court of jurisdiction over his claim. Second, the United States contends that Valn's claim arises from a negligent "misrepresentation" by agents of the government. The United States retains its sovereign immunity with respect to tortious misrepresentations and asserts this FTCA exception as a defense to Valn's claim. Last, the government interposes the *Feres* defense, a judicially-crafted exception to the FTCA which bars FTCA claims by servicemen incident to their military service.

## I. STATUTE OF LIMITATIONS.

The government contends that Valn failed to comply with 28 U.S.C. § 2401(b), which requires a claimant under the FTCA to present his or her claim to the appropriate government agency within two years after it accrues. On its face, Valn's complaint alleges negligent conduct resulting in injury to the plaintiff which occurred on or about July 10, 1978, when plaintiff received orders activating him in the Army, and subsequent negligence in the failure of his superiors to discharge him from active duty upon presentation of his discharge certificate. Plaintiff filed his administrative claim less than two years after these events.

Nevertheless, the United States urges that any injuries resulting from negligence by Army officials in 1978 was part and parcel of acts which occurred in 1974 and are beyond the reach of the statute of limitations. The Delaware National Guard instructed plaintiff to report for active duty in September, 1974. Thus, the government reasons, plaintiff became aware at that time that the Delaware National Guard believed that he had continuing military service obligations, notwithstanding his discharge from the Army. If this belief was a result of negligence, and plaintiff suffered injury as a result, the argument runs, then plaintiff knew or should have known of his right to seek a FTCA remedy.

■ If one could properly characterize the call up order in 1974 as being the proximate cause of any injuries plaintiff may have suffered thereafter, I would accept the government's argument. But many events and four years intervened before the July 1978 call up. During that time, plaintiff alleges that he refused to attend Delaware National Guard drills and put the Guard on notice that he considered himself to have fulfilled his military service obligations. Plaintiff also alleges new acts of negligence in 1978. Consequently, I cannot agree that no cause of action could have accrued within the statutory two-year period.

In its essence, the government's argument is that plaintiff, by reporting for active duty training in 1974, waived his right to assert his Army discharge; or put another way, he was contributorily negligent when he failed to cause a timely correction of the administrative error in 1974. The issues of waiver and contributory negli-

---

**1.** Under *United States v. Russo,* 1 M.J. 134 (C.M.A.1975) a person invalidly enlisted or activated remained a civilian and was not subject to military discipline. Congress subsequently modified the *Russo* doctrine to preserve court martial jurisdiction over persons invalidly, but voluntarily, enlisted or activated. 10 U.S.C. § 802(b).

gence cannot be resolved without further development of the record, however, and, in view of the conclusion reached hereafter, need not be pursued.

## II.  MISREPRESENTATION.

■ With considerable ingenuity, the government strives to place the allegations of this complaint within the gravamen of the common law tort of misrepresentation.

The simple fact of the matter, however, is that Valn was never misled by a misrepresentation of the government.[2] However negligent the government may have been in communicating misinformation to him, Valn did not credit that misinformation and, to the extent his alleged injuries are in any way related to misinformation, they were the product of the Army's reliance on misinformation, not Valn's.[3]

## III.  THE FERES DEFENSE.

Congress passed the FTCA shortly after the end of World War II.[4] Unlike earlier tort claims proposals, the FTCA, as enacted, did not deny recovery to members of the armed forces. *Brooks v. United States,* 337 U.S. 49, 57, 69 S.Ct. 918, 921, 93 L.Ed. 1200 (1949). However, in *Feres v. United States,* 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950), the Supreme Court concluded that Congress did not intend to create a

cause of action for servicemen "where the injuries arise out of or are in the course of activity incident to service."[5] The Court reached this conclusion because of the special relationship which exists between a sovereign and the members of its armed forces.

As the Supreme Court has explained in *Feres* and its progeny,[6] the special nature of this relationship is relevant for a number of reasons.  First, Congress, when choosing a standard of FTCA liability, decided that the Federal Government should be liable "in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. § 2674.  This choice of a private liability standard makes it unlikely that Congress had in mind liability arising from a relationship which is not comparable to any found in the private sphere.  Second, given the deleterious impact on discipline and morale, it is similarly unlikely that Congress intended to authorize litigation in which military orders would be second-guessed and members of the armed forces would be called upon to testify about each other's decisions and actions.  Third, the relationship between the United States government and members of its armed forces is a peculiarly federal concern and it would be anomalous to provide that the liability of the latter to the former is to be governed by divergent state rules.  Finally, the sovereign has traditionally provided

---

2.  The only statement upon which plaintiff seems to have relied is the representation that his enlistment in the Army would terminate his legal obligations to the Delaware National Guard.  Although this representation proved incorrect in practice, in theory it was entirely true, as the Army's own jurisdictional investigation later established.  Reliance on a true statement does not give rise to the tort of misrepresentation.

3.  This distinguishes the present case from *Fitch v. United States,* 513 F.2d 1013 (6th Cir.), cert. denied, 423 U.S. 866, 96 S.Ct. 127, 46 L.Ed.2d 95 (1975) (plaintiff relied on misrepresentation that he received a high number in the draft lottery) and *Reamer v. United States,* 459 F.2d 709 (4th Cir. 1972) (plaintiff relied upon a promise that he could finish law school before being called up for enlistment).

4.  60 Stat. 842 (1946) (current version at 28 U.S.C. §§ 2671–2680).

5.  340 U.S. at 146, 71 S.Ct. at 159.  *Feres* involved a suit by an executrix of a serviceman seeking damages for negligence which allegedly caused the barracks fire in which the serviceman died.  The Court distinguished *Feres* from an earlier FTCA suit in which it permitted recovery under the Act to an active member of the Army who was injured while on furlough in an automobile accident caused by negligence of a government employee.  *Brooks v. United States,* 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949).

6.  *Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 671–72, 97 S.Ct. 2054, 2057–58, 52 L.Ed.2d 665 (1976); *United States v. Muniz,* 374 U.S. 150, 159, 83 S.Ct. 1850, 1856, 10 L.Ed.2d 805 (1963); *United States v. Brown,* 348 U.S. 110, 112, 75 S.Ct. 141, 145, 99 L.Ed. 139 (1954).

special compensation arrangements for servicemen injured in the course of their military service.

While I agree with Valn that Congress has not provided alternative compensation for the kind of injury allegedly experienced by him in this case,[7] the other relevant factors lead me to the conclusion that Congress did not intend to waive the sovereign immunity of the United States in the circumstances presented by this case.

Valn asserts that the concerns giving rise to the *Feres* doctrine are irrelevant here because no military relationship existed at the time of his alleged injuries. While I agree that no *de jure* military relationship existed, this fact is not controlling where the existence of what may be called a *de facto* military relationship raises similar concerns which must be taken into account in determining the intent of Congress with respect to the scope of the FTCA.

In 1974, Valn voluntarily assumed a six-year commitment to the National Guard. Valn thereafter claimed that his subsequent enlistment in, and/or discharge from, the Army terminated his National Guard obligations. The National Guard, and eventually the Army, took a different view, however. During the period pending resolution of this dispute, Valn was cast in the role of a soldier—he was present in uniform on a military installation pursuant to a facially valid military order[8] and was expected by those around him to carry out a military mission in accordance with the directives of his superior officers. The relevant question is whether Congress intended FTCA liability to arise in the context of such a *de facto* military relationship.

I turn first to the standard of liability chosen by Congress—the FTCA's "same

manner, same extent" test. In determining whether there exists an analogous State cause of action against private individuals, *Feres* instructs that it is necessary to consider the status of the parties:

> It is true that if we consider relevant only a part of the circumstances and ignore the status of both the wronged and the wrongdoer in these cases we find analogous private liability. In the usual civilian doctor and patient relationship, there is of course a liability for malpractice. And a landlord would undoubtedly be held liable if an injury occurred to a tenant as the result of a negligently maintained heating plant. But the liability assumed by the Government here is that created by "all the circumstances," not that which a few of the circumstances might create.

*Feres,* 340 U.S. at 142, 71 S.Ct. at 157. The Court in *Feres* was unable to find an analogous cause of action that considered the unique relationship between soldier and government:

> We know of no American law which ever has permitted a soldier to recover for negligence, against either his superior officers or the Government he is serving. Nor is there any liability "under like circumstances," for no private individual has power to conscript or mobilize a private army with such authorities over persons as the Government vests in echelons of command.

*Feres,* 340 U.S. at 141–142, 71 S.Ct. at 156–157.

Valn asserts here that his allegations of unlawful and involuntary induction into the military constitute torts of negligence, invasion of privacy, false imprisonment and du-

---

7. Congress has provided no alternative means of compensation for persons unlawfully detained in the armed forces.

8. Valn voluntarily enlisted in the National Guard and in the Army. At the time he was recalled to active duty, there was a dispute as to whether his military obligations had actually terminated. An authorized military officer, taking one view of the matter, ordered his transfer to active duty. The fact that this

transfer was later determined to be in error does not mean Valn was "shanghaied" into service. *See United States v. Domingos,* 193 F. 263 (1911). Unlike the shanghaied sailor, Valn had a pre-existing relationship with the military, voluntarily entered into, which served as the basis for the order recalling him to active service. Contrary to plaintiff's suggestion, I believe the "shanghaied" sailor case presents an entirely different problem.

ress and coercion under Delaware law and therefore, are actionable under the FTCA. The cases relied on by Valn, however, do not involve suits by similarly situated plaintiffs.[9] From any relevant perspective, the relationship between Valn and the Army at the time of his alleged injuries is far more similar to that of the plaintiffs in the line of cases in which recovery has been denied under the *Feres* doctrine.[10] Once the military character of that relationship is factored in—as *Feres* indicates is necessary—I find no state tort analogous to the unique theory of liability advanced in this case.

In a case with remarkably similar facts, *Small v. United States,* 219 F.Supp. 659 (D.Del.1963), *aff'd on other grounds,* 333 F.2d 702 (3d Cir. 1964), Judge Rodney had difficulty, as I do here, in finding analogous liability under Delaware law. In *Small,* plaintiff brought suit under §§ 1346(b) and 2674 of the FTCA seeking damages due to the government's alleged negligent conduct in calling him to active duty. Plaintiff, a practicing dentist, was a member of the Army "Standby Reserve" and was mistakenly called to active service pursuant to a 1961 Congressional resolution authorizing the call of members of the "Ready Reserve" but not of members of the "Standby Reserve." In concluding that there was no analogous Delaware tort liability, Judge Rodney observed:

The act of calling one to active duty is one situation which is impossible to duplicate, approximate or analogize in private life. As the Court stated in *Feres v. United States,* 340 U.S. 141, 71 S.Ct. 157, 95 L.Ed. 152:

> * * * Nor is there any liability "under like circumstances," for no private individual has power to conscript or mobilize a private army * * *.

There is no analogous situation under the laws of Delaware where a private individual can conscript a man's services, assume complete control over all of his acts and movements and require obedience to all orders unless, perhaps to some degree, in pursuance of criminal proceedings.

219 F.Supp. at 665.

This conclusion is equally appropriate here. Valn's alleged injuries resulting from the Army's call to active service are unparalleled in civilian life, and I am not persuaded that an analogy can be made to the torts of negligence, duress and coercion, or invasion of privacy. Furthermore, looking to the closest analogy that could be made—an action for false imprisonment[11]—does not aid Valn's case because false imprisonment is an express exception to government liability under the FTCA.[12]

---

**9.** *See, e.g., Delmarva Power & Light v. Stout,* 380 A.2d 1365 (Del.Supr.1977) (negligence); *Barbieri v. News Journal Co.,* 189 A.2d 773 (Del.Supr.1963) (invasion of privacy); *Marley v. Duff,* 80 A. 235 (Super.Ct.1911) (false imprisonment); *Crain v. Krehbiel,* 443 F.Supp. 202 (N.D.Cal.1977) (duress/coercion).

**10.** *See, e.g., Garrett v. United States,* 625 F.2d 712 (5th Cir. 1980); *Torres v. United States,* 621 F.2d 30 (1st Cir. 1980).

**11.** *See Restatement (Second) of Torts* § 35 (1965) which provides:
> (1) An actor is subject to liability to another for false imprisonment if
> (a) he acts intending to confine the other or a third person within boundaries fixed by the actor, and
> (b) his act directly or indirectly results in such a confinement of the other, and
> (c) the other is conscious of the confinement or is harmed by it.

> (2) An act which is not done with the intention stated in Subsection (1, a) does not make the actor liable to the other for a merely transitory or otherwise harmless confinement, although the act involves an unreasonable risk of imposing it and therefore would be negligent or reckless if the risk threatened bodily harm.

**12.** 28 U.S.C. § 2680(h). Also, I do not find the 1974 amendments to the FTCA, making actionable false imprisonment caused by investigative or law enforcement officers, applicable here. The Congressional waiver of sovereign immunity under the 1974 amendments was limited in scope. It appears from the legislative history that Congress amended the Act in answer to illegal "no-knock" raids by federal narcotics agents. S.Rep.No. 588, 93rd Cong., 2d Sess., *reprinted in,* 1974 U.S. Code Cong. & Ad. News 2789, 2790–91. *See also Solomon v. United States,* 559 F.2d 309, *reh'g. en banc denied,* 564 F.2d 98 (5th Cir. 1977) (security employees of a military exchange were not

I turn now to the significance of the additional concerns expressed by the Supreme Court in *Feres* and its progeny in attempting to decipher Congressional intent in the context of FTCA suits by military personnel. In *United States v. Brown,* 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954), the Court expressed a concern for:

> The peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty. . . .

348 U.S. at 112, 75 S.Ct. at 145. More recently, the Court noted that civilian trials in suits brought by military personnel would necessarily "involve second-guessing military orders, and would often require members of the Armed Services to testify in court as to each other's decisions and actions." *Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 673, 97 S.Ct. 2054, 2058, 52 L.Ed.2d 665 (1976).

I perceive no reason to anticipate any lesser detrimental impact on military discipline and morale from a suit commenced by one having a status like that of Valn at the time of his alleged injuries than from suits commenced by military personnel having a *de jure* military relationship with the government. Certainly, both hold the same potential for the second-guessing of military orders and for members of the services being called upon to publicly critique their peers. This is implicitly recognized in cases like *Garrett v. United States,* 625 F.2d 712 (5th Cir. 1980), *cert. denied,* 450 U.S. 918, 101 S.Ct. 1363, 67 L.Ed.2d 344 (1981). In *Garrett,* the plaintiff was a marine who had been detained in the corps for two months

beyond the expiration of his enlistment contract. The Court held that any injuries suffered incident to the military's failure to release or discharge the plaintiff upon expiration of his enlistment contract arose "out of the military relationship" and was thus barred by the *Feres* doctrine. *Id.* at 714.

■ In situations like that presented in the *Garrett* case, the plaintiff does have a *de jure* military status. As the *Garrett* court noted, there is a federal statute which specifically provides that a member of "a regular component of the armed services" whose enlistment has expired is nevertheless not released from active duty until he has received his discharge papers.[13] There appears to be no similar statute relating to the termination of National Guard commitments, and as earlier noted, I accept for present purposes the conclusion that Valn's enlistment in, and/or discharge from, the regular Army, legally terminated his National Guard enlistment. The same considerations which prompted Congress to enact the statute referred to in *Garrett,* however, persuade me that if Congress had expressly addressed the *de facto* military status situation in the FTCA, it would have treated claims arising in such situations in the same manner as the type of claim asserted in the *Garrett* case. The statute exists because it is important to the maintenance of discipline and morale in the armed services that those occupying military positions continue to be treated as military personnel pending resolution of any disputes about the extent of their military obligations. Because I find no valid distinction from the standpoint of discipline and morale between the *de facto* and *de jure* military situations, I conclude that Congress did not intend to include Valn's situation within the scope of the FTCA.

"investigative or law enforcement officers" within meaning of the FTCA waiver of sovereign immunity for actions based on false arrest and false imprisonment).

**13.** *Id.* at 713. The relevant statutory sections provide:

> A member of an armed force may not be discharged or released from active duty until his discharge certificate or certificate of re-

lease from active duty ... are ready for delivery to him. . . .

10 U.S.C. § 1168.

> Members of a regular component of the armed forces, including those awaiting discharge after expiration of their terms of enlistment [are subject to the Code of Military Justice]. . . .

10 U.S.C. § 802(a).

Finally, I turn to the "distinctively federal character" of the relationship between the government and the members of the armed forces. *Feres,* 340 U.S. at 143, 71 S.Ct. at 157. As the Supreme Court observed in the *Stencel Aero* case, because that relationship is a peculiarly federal concern, "it would make little sense to have the government's liability to members of the armed services dependent upon the fortuity of where the soldier happened to be stationed at the time of the injury." 431 U.S. at 671, 97 S.Ct. at 2057. Here, once again, the rationale supporting the *Feres* construction of the FTCA provides no basis for distinguishing between Valn's suit and any other suit involving injuries occurring "in the course of activity incident to service." *Feres,* 340 U.S. at 146, 71 S.Ct. at 159.

The relationship between the United States and persons in Valn's position at the time of his alleged injuries is no less "distinctively federal" in character than the relationship between the government and those occupying *de jure* military positions. The process which resulted in Valn's transfer from National Guard to active Army status and which thus occasioned his injuries is in all material respects like the discharge process which caused the plaintiff's injuries in *Torres v. United States,* 621 F.2d 30 (1st Cir. 1980). The Court's characterization of that discharge process and the ultimate conclusion which it reached can appropriately be applied to the process which occasioned the injuries in this case:

> The discharge process itself is conducted by military personnel in the course of their military duties and involves an evaluation of the soldier's service and a classification of his status according to factors which are peculiar to the military nature of the relationship between the soldier and the government.... [T]o allow soldiers to maintain actions arising under state law for injuries allegedly stemming from discharges with which they take issue would be inconsistent with *Feres,* which rested in substantial part upon a finding that the "distinctly federal" character of the military relationship makes inappropriate the countenancing of FTCA actions based on injuries arising out of that relationship.

*Torres,* 621 F.2d at 32 (citations omitted).

In summary, plaintiff in this action seeks compensation for injuries which arose out of his military service. The United States has not waived its sovereign immunity with respect to such claims. The government's motion to dismiss will, accordingly, be granted.[14]

**14.** I do not, of course, suggest that military personnel have no legal recourse if held in the military after they have satisfied all of their military obligations. In appropriate circumstances, the habeas corpus petition may be used to test the legality of induction into or detainment by the armed forces. *See Jones v. Cunningham,* 371 U.S. 236, 240, 83 S.Ct. 373, 375, 9 L.Ed.2d 285 (1962); *Helwick v. Laird,* 438 F.2d 959 (5th Cir. 1971); *Talmage v. Froehlke,* 345 F.Supp. 1361 (W.D.N.C.1972). These individuals may not, however, sue the United States in tort for damages under the FTCA.