**James I. VALN, Appellant,**

v.

**UNITED STATES of America Department of Defense, United States Army, Appellee.**

No. 82–1568.

United States Court of Appeals, Third Circuit.

Argued April 11, 1983.

Decided May 31, 1983.

As Amended June 13, 1983.

---

David Rudovsky (argued), Kairys, Rudovsky & Maguigan, Philadelphia, Pa., Lee Goldstein, Balick & Yucht, Wilmington, Del., for appellant.

Peggy L. Ableman (argued), Asst. U.S. Atty., Joseph J. Farnan, Jr., U.S. Atty., Wilmington, Del., for appellee.

Before HUNTER and HIGGINBOTHAM, Circuit Judges, and GERRY,* District Judge.

---

* Hon. John F. Gerry, United States District Judge for the District of New Jersey, sitting by designation.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

James Valn filed the instant action in the United States District Court for the District of Delaware under the Federal Tort Claims Act ("FTCA"). 28 U.S.C. §§ 2671–2680 (1976 & Supp. V 1981). He sought monetary damages against the United States for a series of alleged negligent and wrongful acts that resulted in his involuntary activation into the military and his imprisonment for refusing to submit to military authority. Relying on *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), the district court held that the United States had not waived its sovereign immunity with respect to Valn's claims and granted the government's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and Fed.R.Civ.P. 12(b)(6). We will reverse.

### I

According to Valn's complaint,[1] in February of 1974 Valn enlisted for a period of six years in the Delaware Army National Guard. Approximately four months later Valn enlisted for a period of two years in the United States Army and was assigned to the Army base at Fort Dix, New Jersey. At the time of his enlistment in the regular Army, Valn was informed by Army personnel that he was relieved of his National Guard commitment. During a physical examination at Fort Dix, Army doctors determined that Valn had a traumatic cataract. Because of his eye problem, on July 22, 1974, Valn received an honorable discharge from the Army for medical reasons. That discharge terminated any and all obligations he then had to the United States Army or to the Delaware Army National Guard.

Despite his discharge Valn received orders on September 10, 1974, to report to Fort Jackson, South Carolina, for nineteen weeks of training. Valn protested that his

---

1. For the purposes of this appeal, we must accept as true the allegations in Valn's complaint. *Jaffee v. United States,* 663 F.2d 1226, 1229 (3d Cir.1981) (en banc), *cert. denied,* 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982).

military obligation had terminated but, upon threat of punishment, he reported to Fort Jackson where he involuntarily underwent active duty training. After his release from Fort Jackson, he was ordered to report to the Delaware Army National Guard to complete his National Guard duty. He continued to assert that he had no legal responsibility to the military and refused to attend National Guard meetings.

Because of his unwillingness to perform National Guard duties, on July 10, 1978, Valn received orders involuntarily activating him into the United States Army. Valn protested to Army officials but was unsuccessful in convincing them that he had no obligation to the military. On July 21, 1978, he reported as ordered to Fort Carson, Colorado and, after being assigned to a company, spoke with his Commanding Officer, showed him his 1974 discharge, and asked to be relieved of active duty. The Commanding Officer agreed to investigate but did nothing to effectuate Valn's immediate release from duty. Sometime thereafter Valn refused to perform certain duties as ordered and, as a result, was confined and subjected to court martial proceedings. On March 8, 1979, with the assistance of defense counsel, Valn requested a discharge from active duty. On March 23, 1979, the Army placed Valn on excess leave pending a jurisdictional determination of his military status. After an investigation by the Judge Advocate General's Office, it was determined that in fact Valn's discharge on July 22, 1974, had terminated all his military commitments. As a result of that finding, on August 7, 1979, the Army relieved Valn from active duty with an honorable discharge.

On June 10, 1980, Valn filed an administrative claim with the Department of Defense asserting that the United States Army had been negligent in placing him on active duty in July of 1978 and in later

incarcerating him at Fort Carson, Colorado. He sought damages of $30,000 for lost income and $200,000 for pain and suffering. The United States Army Claim Service denied his claim on January 7, 1981.

The instant suit was filed on February 20, 1981. Valn asserted that the United States, through its agents, had acted negligently and wrongfully by ordering him to return to active duty status in July of 1978 and by refusing to relieve him of that duty until August 7, 1980. The United States filed an answer on February 27, 1981. At the same time it also filed a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief could be granted. See Fed.R.Civ.P. 12(b)(1), (b)(6). In its motion to dismiss, the government argued, inter alia, that Valn's claim was barred under the doctrine of Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950).

On September 3, 1982, the district court, relying on the Feres doctrine, granted the government's motion to dismiss. Valn v. United States, 548 F.Supp. 921 (D.Del. 1982).[2] Valn appeals from that order.

## II

It is axiomatic that the United States as a sovereign is immune from suit except to the extent that it consents to be sued. United States v. Mitchell, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980). Through legislation Congress has waived the government's immunity from suit in certain circumstances. One example is the FTCA's broad waiver of sovereign immunity for individuals suing the government in tort. The FTCA provides that the "United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674 (1976), subject to certain specific exceptions not

---

2. The trial court rejected the government's other arguments that Valn's suit was untimely under 28 U.S.C. § 2401(b) (1976 & Supp. IV 1980), or that it was premised upon misrepresentation and therefore barred by 28 U.S.C. § 2680(h) (1976). 548 F.Supp. at 922–23. The government has chosen not to appeal the district court's resolution of those issues.

pertinent to this appeal, *see* 28 U.S.C. § 2680 (1976).[3]

■ In *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), however, the Supreme Court held that Congress had not intended that the government be "liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Id.* at 146, 71 S.Ct. at 159. *Feres* involved a suit by an executrix of a serviceman seeking damages for negligence which allegedly caused a barracks fire in which the serviceman died. The Supreme Court held that under the FTCA, the government could not be liable for those injuries. *Id.* Although the Court found "few guiding materials for [its] task of statutory construction," it based its interpretation of the FTCA on an examination of "the entire statutory system of remedies against the Government." *Id.* at 138–39, 71 S.Ct. at 155–56. Later Supreme Court decisions have articulated the two rationales lying behind the *Feres* doctrine of immunity from suits brought by servicemen—the potential effect of damage suits on military discipline and the exercise of military discretion, and the existence of an alternative no-fault compensation scheme pursuant to the Veterans' Benefits Act, 38

U.S.C. §§ 301–362, 401–423, 501–562, 601–664, 701–788 (1976 & Supp. V 1981). *See Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 671–72, 97 S.Ct. 2054, 2057–58, 52 L.Ed.2d 665 (1977); *United States v. Muniz,* 374 U.S. 150, 159, 83 S.Ct. 1850, 1856, 10 L.Ed.2d 805 (1963); *United States v. Brown,* 348 U.S. 110, 112, 75 S.Ct. 141, 145, 99 L.Ed. 139 (1954); *Jaffee v. United States,* 663 F.2d 1226, 1232–33 (3d Cir.1981) (en banc), *cert. denied,* 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982).[4] Relying on those two rationales, the Supreme Court has adhered to "the line drawn in the *Feres* case between injuries that did and injuries that did not arise out of or in the course of military duty" when determining whether a suit is proper under the FTCA. *Jaffee,* 663 F.2d at 1233 (quoting *United States v. Brown,* 348 U.S. at 113, 75 S.Ct. at 145).

■ We hold that *Feres* is inapplicable as a bar to the instant suit. Although Valn had at one time been in the military, his discharge in 1974 completely ended his military commitment to either the National Guard or the regular Army. The injuries that he complains of arose from activities occurring when his status was that of a civilian, not that of a serviceman in the armed forces.[5] As a civilian he is outside

3. The statute granting jurisdiction to the district courts to hear tort claims against the United States provides:

    (b) Subject to the provisions of [the FTCA], the district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b) (1976).

4. In *Feres* the Supreme Court recognized a third rationale, the "distinctly federal" relationship between the government and members of its armed forces. *See* 340 U.S. at 143, 71 S.Ct. at 157. As we said in *Jaffe,* however:

    It is doubtful that [the distinctly federal relationship] rationale serves to do anything but

reinforce the other two, for as Justice Marshall pointed out a similar argument could be made with regard to the "Bureau of the Census, the Immigration and Naturalization Service, and many other agencies of the Federal Government." [*Stencel Aero Engineering Corp.,* 431 U.S. 666] at 675 [97 S.Ct. 2054, 2059, 52 L.Ed.2d 665] (Marshall, J., dissenting).

663 F.2d at 1233 n. 7.

5. The instant case is distinguishable from *Small v. United States,* 219 F.Supp. 659 (D.Del.1963), *aff'd on other grounds,* 333 F.2d 702 (3d Cir. 1964), where the plaintiff was in the Army's "Standby Reserve" and was called up erroneously for active duty. In that case the plaintiff's injury arose from activity incident to his status as a member of the military. *Compare Garrett v. United States,* 625 F.2d 712 (5th Cir.1980) (claims arose out of military relationship), *cert. denied,* 450 U.S. 918, 101 S.Ct. 1363, 67 L.Ed.2d 344 (1981) *and Torres v. United States,* 621 F.2d 30 (1st Cir.1980) (same) *with Bankston v. United States,* 480 F.2d 495 (5th

the jurisdiction and disciplinary authority of the Uniform Code of Military Justice. *United States ex rel. Toth v. Quarles,* 350 U.S. 11, 23, 76 S.Ct. 1, 8, 100 L.Ed. 8 (1955). As a civilian he is also ineligible for recovery under the Veterans' Benefit Act for any injuries resulting from his improper activation into the service in 1978 and 1979. *See* 38 U.S.C. § 331 (1976). Thus neither the facts of *Feres* nor the rationales underlying governmental immunity for injuries arising during military service apply to Valn's situation. Therefore we hold that the *Feres* doctrine cannot preclude Valn from stating a claim under the FTCA.[6]

Because *Feres* is not applicable, Valn's claims fall within the "same manner, same extent" test of section 2674 of the FTCA. 28 U.S.C. § 2674 (1976). That section allows an individual to sue the United States if, under state law, an analogous cause of action could be brought against a private individual in state court. Unlike the situation where a plaintiff is a *soldier* suing his military superiors for injuries arising out of or in the course of military duty, Valn is a *civilian* suing the government for injuries arising out of its dealings with Valn as a private citizen. The difficulty noted by the Supreme Court in *Feres* of finding liability analogous to that asserted by a soldier against his military superiors is simply not present.[7] Accordingly Valn's claims of negligence and wrongful acts, claims that the Delaware courts have recognized to present valid causes of action against private individuals,[8] fall within the terms of section 2674.

Cir.1973) (remand for determination of military status).

**6.** The district court recognized that *Feres* was not directly applicable to the instant case because no *de jure* military relationship existed between Valn and the Army at the time the alleged tortious acts occurred. 548 F.Supp. at 924. The district court found, however, that because of Valn's actions, a *de facto* relationship had been created which implicated the same policy concerns articulated by the Court in *Feres* and its progeny. *Id.* We disagree. The court's determination of a *"de facto* military relationship" appears to be drawn from the doctrine of "constructive enlistment" first articulated by the Supreme Court in *In re Grimley,* 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636 (1890). *See Adkins v. United States Navy,* 507 F.Supp. 891, 895–97 (S.D.Tex.1981); 10 U.S.C. § 802(c) (1976 & Supp. IV 1980). In *Grimley* the Court restated the rule of voidable contracts that an individual may not profit from his own misrepresentations where the other party to the contract is misled. Thus a recruit who improperly entered into an enlistment contract could be held to that contract if he met the minimum age requirements, took an oath of allegiance, and deliberately and voluntarily changed his status to that of a soldier. *See* 137 U.S. at 150–57, 11 S.Ct. at 54–56. Assuming without deciding that an individual who constructively enlists in the military would fall under the *Feres* doctrine, based on the allegations in Valn's complaint constructive enlistment is simply inapplicable to the instant case. First, Valn's complaint indicates that no enlistment contract existed at the time of Valn's "activation" in 1978. Complaint at ¶¶ 8, 13, 14. The only enlistment contract entered into by Valn had been terminated by the Army's own action of honorably discharging Valn in 1974. Second, Valn's complaint states that he protested that he was being improperly activated in 1978. Complaint at ¶¶ 15, 16. Thus he did not deliberately and voluntarily change his status to that of a soldier.

We also note that the Army itself determined, when it evaluated Valn's administrative claim for damages, that it had no jurisdiction over Valn after 1974. The Office of the Judge Advocate General determined that Valn was not a member of the military under the then applicable law of constructive enlistment. We are unwilling to hold that despite that finding, the Army can now characterize Valn as a *de facto* soldier and ensnare him within the net of the *Feres* exception to the FTCA.

**7.** *See United States v. Muniz,* 374 U.S. 150, 159, 83 S.Ct. 1850, 1856, 10 L.Ed.2d 805 (1963); *Rayonier, Inc. v. United States,* 352 U.S. 315, 318–20, 77 S.Ct. 374, 376–77, 1 L.Ed.2d 354 (1957); *Indian Towing Co. v. United States,* 350 U.S. 61, 68–69, 76 S.Ct. 122, 126, 100 L.Ed. 48 (1955). The Court recently stated: "The exemption of the sovereign from suit involves hardship enough where consent has been withheld. We are not to add to its vigor by refinement of construction where consent has been announced." *Block v. Neal,* —— U.S. ——, 103 S.Ct. 1089, 1094, 75 L.Ed.2d 67 (1983) (quoting *United States v. Aetna Casualty & Sur. Co.,* 338 U.S. 366, 383, 70 S.Ct. 207, 216, 94 L.Ed. 171 (1949) (quoting *Anderson v. Hayes Constr. Co.,* 243 N.Y. 140, 147, 153 N.E. 28, 29–30 (1926) (Cardozo, J.))).

**8.** For examples of possible state causes of action see, *inter alia, Delmarva Power & Light v. Stout,* 380 A.2d 1365 (Del.1977) (negligence)

## III

The district court's order of September 3, 1982, granting the United States' motion to dismiss will be reversed, and this action will be remanded for further proceedings consistent with this opinion.[9]

and *Barbieri v. News-Journal Co.,* 56 Del. 67, 189 A.2d 773 (Del.1963) (invasion of privacy).

**9.** In reversing the district court's order granting the government's motion to dismiss, we of course do not address the merits of any of Valn's claims against the United States. We also do not preclude the government from raising any defenses to the merits on remand to the district court.