# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| LEROY COOK, JR., and KIMBERLY A. COOK | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | C.A. No. N17C-03-208 JRJ |
| J AND V TRUCKING COMPANY, INC., and J & V TRUCKING, INC., Jointly and Severally, | ) ) ) ) ) | |
| Defendants. | ) ) | |

Date Submitted:  February 8, 2021
Date Decided:  April 7, 2021

## MEMORANDUM OPINION

*Upon Defendant J and V Trucking Company, Inc.'s Motion for Summary Judgment*:  **GRANTED IN PART AND DENIED IN PART**.

Leroy A. Tice, Esquire, and Charles H. Toliver, IV, Esquire, Leroy A. Tice, Esquire, P.A., 1203 North Orange Street, 2nd Floor Wilmington, Delaware 19801, Attorneys for Plainitffs.

Tiffany M. Shrenk, Esquire, MacElree Harvey, Ltd., 5721 Kennett Pike, Centreville, Delaware 19807; Attorney for Defendant J and V Trucking Company, Inc.

Amy M. Taylor, Esquire, Heckler & Fabrizzio, 800 Delaware Avenue, Suite 200, Wilmington, Delaware 19801, Attorney for Defendant J and V Trucking Company, Inc.

**Jurden, P.J.**

# I.   INTRODUCTION

After a minor traffic collision, a physical altercation ensued between Plaintiff Leroy Cook, Jr. ("Cook"), and Cruz Garcia, a truckdriver formerly employed by Defendant J and V Trucking Company, Inc.[1] Cook sued Garcia and Defendant for several torts. As the case developed, Garcia was dismissed, and the Court allowed Cook to amend his complaint to add his wife, Plaintiff Kimberly Cook ("Ms. Cook"), so that she could assert a loss of consortium claim.[2] Pending before the Court is Defendant's Motion for Summary Judgment. For the reasons explained below, Defendant's Motion is **GRANTED IN PART AND DENIED IN PART**.

# II.   BACKGROUND

## A.   Factual Background

---

[1] Cook named two corporate defendants in his original Complaint, and both remain in this case. *See generally* Compl. (naming Cruz Garcia, J and V Trucking Company, Inc., and J & V Trucking Inc. as defendants) (Trans. ID. 60360174). J & V Trucking Inc. remains unrepresented. The Court assumes that J and V Trucking Company, Inc. and J & V Trucking Inc. refer to the same corporate entity. Accordingly, the Court uses the singular "Defendant," which refers only to J and V Trucking Company, Inc., the represented entity.

[2] On October 10, 2020, Cook and Ms. Cook (collectively, "Plaintiffs") filed a six-count amended Complaint ("Amended Complaint") against Defendant. *See generally* First Amended Complaint (Trans. ID. 66008889). Plaintiffs assert the following claims: tortious assault (Count I), tortious battery (Count II), and intentional infliction of emotional distress (Count III) on the doctrine of *respondeat superior* (Count IV); negligent hiring, retention, and supervision of Garcia (Count V); and loss of consortium (Count VI). *Id.* at 2–6, ¶¶ 10–39.

On or about February 24, 2014, Defendant hired Cruz Garcia as a truck driver.[3] At the time he was hired, Garcia signed a document informing him that "fighting" or using "threatening or abusive language" were "reasons for immediate termination of employment."[4]

On May 26, 2016, Cook was involved in a minor traffic collision with Cruz Garcia.[5] Garcia was Defendant's employee at the time of the collision.[6] Cook and Garcia exited their vehicles and engaged in a physical altercation.[7] Ultimately, Cook was found at fault for the traffic collision,[8] and Garcia was arrested and faced criminal charges because of the physical altercation.[9] Defendant no longer employs Garcia.[10]

## B. Procedural History

On November 30, 2020, Defendant filed the instant Motion for Summary Judgment challenging Plaintiffs' claims based on the doctrine of *respondeat superior* and Plaintiffs' negligent hiring, retention, and supervision claim.[11] Briefing

---

[3] *See* Defendant J and V Trucking Company, Inc.'s Motion for Summary Judgment ("Opening Brief"), Exhibit B (Trans. ID. 66145588). Garcia possessed a commercial driver's license and a Transportation Worker Identification Credential ("TWIC") when he was hired. Opening Brief, Exhibit C, at 23:16–23 (Trans. ID. 66145588).

[4] Opening Brief, Exhibit D (Trans. ID. 66145588).

[5] Plaintiffs' Response in Opposition to Defendants' Summary Judgment Motion ("Responding Brief"), Exhibit A, at 36:14–19 (Trans. ID. 66145588).

[6] *See* Opening Brief, Exhibit A, No. 38 (Trans. ID. 66145588).

[7] *See id.*

[8] Opening Brief, Exhibit E, at 47:6–13 (Trans. ID. 66145588).

[9] Opening Brief, Exhibit A, No. 25 (Trans. ID. 66145588).

[10] Opening Brief, Exhibit A, No. 43 (Trans. ID. 66145588).

[11] *See generally* Opening Brief (Trans. ID. 66145588).

finished on February 2, 2021.[12] On March 17, 2021, the Court issued an order stating that, for purposes of the instant Motion, it would consider the criminal dockets that Plaintiffs attached to their Responding Brief, even though those dockets were produced after the discovery cutoff.[13]

## III. STANDARD OF REVIEW

Summary judgment is appropriate only if the moving party shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[14] "When the evidence shows no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to demonstrate that there are genuine issues of material fact that must be resolved at trial."[15] "All facts are viewed in a light most favorable to the non-moving party."[16]

## IV. DISCUSSION

### A. *Respondeat Superior*

---

[12] On January 25, 2021, Plaintiffs filed their Responding Brief. *See generally* Responding Brief (Trans. ID 66280763). On February 8, 2021, Defendant filed its Reply Brief. *See generally* Defendant J and V Trucking Company, Inc.'s Reply in Support of Motion for Summary Judgment ("Reply Brief") (Trans. ID. 66318828).

[13] *See generally* Order (Trans. ID 66428844); *Cook v. J and V Trucking Company, Inc.*, 2021 WL 1016450 (Del. Super. Ct. Mar. 17, 2021).

[14] Super. Ct. Civ. R. 56(c).

[15] *Tolliver v. U.S. Bank Nat'l Ass'n*, 2020 WL 2095830, at *1 (Del. Apr. 29, 2020) (internal quotation marks omitted) (quoting *Grabowski v. Mangler*, 938 A.2d 637, 641 (Del. 2007)).

[16] *Preston Hollow Capital LLC v. Nuveen LLC*, 2020 WL 7365808, at *4 (Del. Super. Ct. Dec. 15, 2020) (citing *Burkhart v. Davies*, 602 A.2d 56, 58–59 (Del. 1991)).

*Respondeat superior* is a doctrine of agency law under which "an employer is subject to liability for torts committed by employees while acting within the scope of their employment."[17] To determine whether an employee acted within the scope of employment, the Court consults § 228 of the Restatement (Second) of Agency.[18] If the Court finds that the employee did not act within the scope of employment, then the Court consults the exceptions in § 219.[19] "When § 219's exceptions apply, an employer can be held responsible under *respondeat superior* even if § 228 is not satisfied."[20]

      1.    Garcia Was Not Acting Within the Scope of Employment When He Engaged in a Physical Assault with Cook

Section 228 provides:

(1) Conduct of a servant is within the scope of employment if, but only if:

    (a) it is of the kind he is employed to perform;

    (b) it occurs substantially within the authorized time and space limits;

    (c) it is actuated, at least in part, by a purpose to serve the master, and

    (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

---

[17] *Verrastro v. Bayhospitalists, LLC*, 208 A.3d 720, 724 (Del. 2019) (internal quotation marks and brackets omitted) (first quoting Restatement (Third) of Agency § 2.04 (2005); and then citing Restatement (Second) of Agency § 219 (1958)).

[18] *Sherman v. State Dep't of Pub. Safety*, 190 A.3d 148, 154 (Del. 2018) (citations omitted) (noting that "§ 228 . . . has been adopted as Delaware law").

[19] *Id.*

[20] *Id.*

> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.[21]

Here, Defendant argues that Garcia was not acting within the scope of employment pursuant to § 228 when he engaged in a physical altercation with Cook after the vehicle collision.[22] Defendant asserts that it hired Garcia as a truck driver, so Defendant expected Garcia merely to transport goods.[23] Next, Defendant points out that it prohibited Garcia from using physical force or threatening words or conduct, so Garcia could not have been motivated by serving Defendant.[24] Defendant also denies that it could have expected Garcia to use force in this situation because he had not exhibited violence or committed a disciplinary infraction while employed by Defendant.[25]

Plaintiffs agree that Defendant hired Garcia as a truck driver for the purpose of transporting goods but deny the remainder of Defendant's argument.[26] Plaintiffs also emphasize that, for purposes of § 228(1)(d), Defendant need not have expected the particular conduct but only the risk of general wrongdoing.[27] Lastly, Plaintiffs

---

[21] Restatement (Second) of Agency § 228 (1958).
[22] Opening Brief, at 4, ¶ 7 (Trans. ID. 66145588).
[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *Id.* at 4, ¶ 7 (citing *Sherman v. State Dep't of Pub. Safety*, 190 A.3d 148, 154 (Del. 2018)).

6

argue that whether an employee acted within the scope of employment is usually a jury question.[28]

The Court finds that Garcia was not acting within the scope of employment when he engaged in a physical altercation with Cook. The elements in § 228(1) are conjunctive; each must be met to find that an employee was acting within the scope of employment.[29] Here, Plaintiffs concede that § 228(1)(a) has not been met. Specifically, Plaintiffs "admit[] that Mr. Garcia was hired as a long-distance tractor-trailer driver to haul mushrooms from Pennsylvania to Massachusetts."[30] So Garcia was not engaging in the kind of conduct that he was employed to perform. In addition, the record shows that Garcia signed a document that provides, in boldface type, that fighting is a ground for immediate termination of employment.[31] Accordingly, the Court finds that Garcia was not acting within the scope of employment pursuant to § 228, so the Court will move on to the exceptions in § 219.

### 2.    Plaintiffs Cannot Satisfy Any of the Exceptions in § 219(2)

Section 219 provides:

(1) A master is subject to liability for the torts of his servants committed while acting in the scope of their employment.

---

[28] *Id.* (citing *Sherman*, 190 A.3d at 170).

[29] *See Sherman*, 190 A.3d at 174 (suggesting that Doe would not have prevailed under § 228 because her complaint did not allege a violation of the "Motivation Prong" of § 228 (i.e., § 228(1)(c)).

[30] Responding Brief, at 3, ¶ 7 (Trans. ID 66280763).

[31] Opening Brief, Exhibit D (Trans. ID. 66145588).

(2) A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless:

> (a) the master intended the conduct or the consequences, or
>
> (b) the master was negligent or reckless, or
>
> (c) the conduct violated a non-delegable duty of the master, or
>
> (d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation.[32]

Defendant argues that there is no evidence in the record to support any of the exceptions in § 219(2).[33]  As for § 219(2)(a) in particular, Defendant asserts that there is evidence that it *prohibited* Garcia from engaging in forceful conduct.[34]  Plaintiffs respond that the record shows that Defendant "acted negligently or recklessly in [its] hiring, supervision[,] and training of Mr. Garcia"—invoking the language of § 219(2)(b).[35]

It appears that Plaintiffs are attempting to "double dip" their negligent hiring and supervision claim.  They assert negligent hiring and supervision as a direct claim against Defendant in their Amended Complaint.[36]  But now, they also seek to use

---

[32] Restatement (Second) of Agency § 219 (1958).
[33] Opening Brief, at 5, ¶ 9 (Trans. ID. 66145588).
[34] *Id.*
[35] Responding Brief, at 4, ¶ 9 (Trans. ID 66280763).
[36] First Amended Complaint, at 5–6, ¶¶ 25–35 (Trans. ID. 66008889)

8

that claim as a basis for imposing vicarious liability against Defendant through the doctrine of *respondeat superior*.[37] The Court finds that Plaintiffs cannot do so.

Delaware law recognizes that the Restatement (Second) of Agency embraces negligent hiring and supervision claims—but in § 213, not in § 219.[38] And the Court has suggested that § 219(2)(b) in particular does not apply to negligent hiring and supervision claims.[39] *Doe v. Bicking* involved a negligent hiring and supervision claim, but the Court analyzed that claim separately from its discussion of *respondeat superior*, § 228, and § 219.[40] And when the Court discussed the exceptions in § 219, it found that only § 219(2)(c) and § 219(2)(d) had "potential applicability."[41] The Court did not find that the presence of a negligent hiring and supervision claim made § 219(2)(b) potentially applicable. For these reasons, the Court finds that Plaintiffs cannot use their negligent hiring and supervision claim to meet the exception in

---

[37] This "double dipping" appears to be a recent development. The allegations in the *respondeat superior* section of the Amended Complaint make no mention of Defendant's alleged negligence in hiring Garcia. *Id.* at 4, ¶¶ 21–24.

[38] *See Simms v. Christina School Dist.*, 2004 WL 344015, at *8 (Del. Super. Ct. Jan. 30, 2004) (citing *Knerr v. Gilpin, Van Trump & Montgomery, Inc.*, 1998 WL 40009 (Del. Super. Ct. Apr. 8, 1988); Restatement (Second) of Agency § 213 (1958)); *A.R. Anthony & Sons v. All-State Investigation Sec. Agency, Inc.*, 1983 WL 881979, at *2 (Del. Super. Ct. Sept. 27, 1983) (citations omitted); *see also* Restatement (Second) of Agency § 213, cmt. d (1958) (citation omitted) ("*Agent dangerous*. The principal may be negligent because he has reason to know that the servant or other agent, because of his qualities, is likely to harm others in view of the work or instrumentalities entrusted to him. If the dangerous quality of the agent causes harm, the principal may be liable under the rule that one initiating conduct having an undue tendency to cause harm is liable therefor.").

[39] *See generally Doe v. Bicking*, 2020 WL 374677 (Del. Super. Ct. Jan. 22, 2020).

[40] *Id.* at *5; *id.* at *6–13.

[41] *Id.* at *7.

9

§ 219(2)(b).  As for the other exceptions in § 219(2), Plaintiffs have neither argued nor shown that there is a genuine issue of material fact.

In sum, the Court finds that Garcia was not acting within the scope of employment pursuant to § 228, that Plaintiffs cannot use their negligent hiring and supervision claim to avail themselves of § 219(2)(b), and that Plaintiffs have not shown a genuine issue of material fact with respect to the other exceptions in § 219(2).  Accordingly, the Court grants summary judgment as to Count IV of the Amended Complaint (*respondeat superior*).  And because *respondeat superior* is the means by which Plaintiffs seeks to hold Defendant liable for tortious assault, tortious battery, and intentional infliction of emotional distress, the Court grants summary judgment as to Counts I, II, and III of the Amended Complaint as well.

## B.     Negligent Hiring, Retention, and Supervision

"Under Delaware law, an employer is liable for negligent hiring and supervision in . . . '[giving] improper or ambiguous orders or in failing to make proper regulations, or in [employing] improper persons involving risk of harm to others, or in [supervising] the employee's activity.'"[42]  "The negligence is based

---

[42] *Doe v. Bicking*, 2020 WL 374677, at \*5 (Del. Super. Ct. Jan. 22, 2020) (quoting *Simms v. Christiana School Dist.*, 2004 WL 344015, at \*8 (Del. Super. Ct. Jan. 30, 2004)).

upon a failure to exercise the care that a reasonably prudent person would exercise under the circumstances."[43]

Defendant argues that a jury could not find it negligent based on the evidence in the record.[44] According to Defendant, nothing in the record shows that Garcia had any incidents of misconduct from the date he was hired (on or about February 24, 2014) to the date of the physical altercation (May 16, 2016).[45] Nor is there any evidence, Defendant continues, that Garcia had been terminated by an employer prior to his joining Defendant.[46] Lastly, Defendant contends that the record shows that Garcia had the proper credentials when he was hired and that he was made to sign a form indicating that Defendant prohibited him from fighting.[47]

Plaintiffs respond that there is evidence in the record that creates a genuine issue of material fact as to whether Defendant was negligent in hiring Garcia.[48] Specifically, Plaintiff avers that Michael Cutone, "who hired Mr. Garcia, did not inquire, investigate[,] or research Mr. Garcia's employment history, criminal past or motor vehicle record." Rather, according to Plaintiffs, Cutone was concern only with whether Garcia "possessed a valid commercial driver's license and a 'TWIC'

---

[43] *Simms v. Christiana School Dist.*, 2004 WL 344015, at *8 (Del. Super. Ct. Jan. 30, 2004) (citation omitted).
[44] Opening Brief, at 6, ¶ 11 (Trans. ID. 66145588).
[45] Opening Brief, at 6, ¶ 11 (Trans. ID. 66145588).
[46] *Id.*
[47] *Id.*
[48] Responding Brief, at 5–6, ¶ 11 (Trans. ID. 66145588).

11

card, the requisite baseline for hauling long distance."[49] Plaintiffs also point to various documents that they attached to their Responding Brief, which include incident reports from the Delaware Transit Corporation—a previous employer of Garcia's—and criminal dockets that purport to show Garcia's convictions for Simple Assault, Third-Degree Assault, and Unlawful Sexual Contact.[50] Such documents, Plaintiffs believe, constitute "evidence of misconduct that would put the Defendants on notice of Mr. Garcia's violent propensities in his past employment or personal life."[51]

Defendant makes three points in reply. First, Defendant asserts that Plaintiffs have not produced an expert to establish the standard of care that an employer must meet when the hiring or supervising truck drivers.[52] Second, Defendant maintains that Cutone did not perform his own background check before hiring Garcia because he believed that Garcia had undergone background checks by the federal government (to obtain his driving credentials) and by the insurance company.[53]

---

[49] *Id.*

[50] *Id.* at 4–5, ¶ 9; *id.* at 6, ¶ 11. *See generally id.*, Exhibit B; *id.*, Exhibit C. In its Reply Brief, Defendant argued that Plaintiff should not be allowed to rely on the criminal dockets because they were produced after the discovery cutoff. Reply Brief, at 1–2, ¶ 2 (Trans. ID. 66318828). On March 17, 2021, the Court issued an order clarifying that it would consider these criminal dockets in ruling on the instant Motion for Summary Judgment. *See generally* Order (Trans. ID 66428844); *Cook v. J and V Trucking Company, Inc.*, 2021 WL 1016450 (Del. Super. Ct. Mar. 17, 2021).

[51] Responding Brief, at 6, ¶ 11 (Trans. ID. 66145588).

[52] Reply Brief, at 4–5, ¶¶ 6–7 (Trans. ID. 66318828).

[53] *Id.* at 4, ¶ 5 (citing Responding Brief, Exhibit A, at 23:16-23; 24:7-12; *id.* at *Id.* at 22:6-15 (Trans. ID. 66145588)).

Third, Defendant argues that Garcia's criminal history does not provide a basis for determining that Defendant was negligent in hiring or supervising Garcia.[54] Defendant avers that Garcia's most recent conviction was about nine years before he was hired, and he had no incidents of misconduct in the first two years of his employment with Defendant.[55]

As an initial matter, the Court finds that Plaintiffs need not produce an expert to establish the standard of care governing the hiring and supervision of truck drivers. Defendant correctly notes that expert testimony is necessary to establish "the standard of care applicable to a professional."[56] A professional "is one who possesses a certain skill or other specialized knowledge that the average lay juror does not possess."[57] Common examples of professionals include physicians, attorneys, architects, and engineers.[58] But it is sometimes difficult to distinguish between a professional and a non-professional.

Fortunately, the Court's decision in *White v. Mood* provides guidance. In *White*, the Court contrasted the home inspector involved in that case with the property manager involved in a previous case, *Vohrer v. Kinnikin*:

---

[54] *Id.* at 2–3, ¶ 3.

[55] *Id.*

[56] *Id.* at 4, ¶ 6 (internal quotation marks omitted) (quoting *Seiler v. Levitz Furniture Co. of E. Region, Inc.,* 367 A.2d 999 (Del. 1976)).

[57] *White v. Mood*, 2020 WL 996736, at *6 (Del. Super. Ct. Mar. 2, 2020) (internal quotation marks omitted) (quoting *Vohrer v. Kinnikin*, 2014 WL 1203270, at *3 (Del. Super. Ct. Feb. 26, 2014)).

[58] *See Seiler v. Levitz Furniture Co. of Eastern Region, Inc.*, 367 A.2d 999, 1007 (Del. 1976) (citations omitted).

In *Vohrer v. Kinnikin*, the court concluded that a property manager, whose duties included arranging and directing repair work, was not a professional in the sense that they were held to an elevated standard of care. The court reasoned that Kinnikin did not receive any specialized training in order to work as an apartment maintenance worker and, as a result of that determination, expert testimony was not required to establish the standard of care applicable to Kinnikin. Unlike the defendant in *Vohrer*, home inspectors are required, by Delaware law, to undergo specialized training and continue their education to maintain their licenses.[59]

Here, Cutone is more like the non-professional property manager in *Vohrer* than the professional home inspector in *White*. For example, nothing in the record suggests that Delaware law requires Cutone to undergo specialized training or continuing education to hire and supervise truck drivers. And Cutone's responsibility of supervising truck drivers is similar to the property manager's responsibility of "arranging and directing repair work."[60] Because Cutone is more like the non-professional property manager in *Vohrer* than the professional home inspector in *White*, the Court finds that Cutone is not a professional for purposes of establishing the standard of care governing the hiring and supervision of truck drivers. Thus, Plaintiffs need not produce an expert; the jury will determine the appropriate standard of care.[61]

---

[59] *White*, 2020 WL 996736, at *6 (citing *Vohrer v. Kinnikin*, 2014 WL 1203270, at *3 (Del. Super. Ct. Feb. 26, 2014)).

[60] *Id.*

[61] *Ridgeway v. Acme Mkts., Inc.*, 2018 WL 4212140, at *3 (Del. Sept. 5, 2018) (citation omitted) ("The jury typically decides the standard of care and its breach when the facts are within their common knowledge. But, when the standard of care requires resort to technical or other complex principles, the plaintiff must establish the standard of care through expert testimony."); *see also*

14

The next issue is whether Cutone's reliance on other entities excused Cutone from performing his own background check on Garcia. In essence, this is a question of whether Defendant—acting through Cutone—breached its standard of care. Because the jury will determine Defendant's standard of care, it will also determine whether Defendant breached that standard of care in deciding not to perform an independent background check on Garcia.[62]

Finally, reasonable minds may differ about whether Garcia's criminal convictions are too old to put Defendant on notice of Garcia's potential issues with violence. Although Defendant believes that "Mr. Garcia's criminal history is insufficient to support knowledge of the need to control Mr. Garcia," the Court cannot make this determination as a matter of law.[63] Accordingly, the Court finds that there is a genuine issue of material fact as to whether Defendant was negligent in hiring and supervising Garcia, so the Court denies summary judgment as to Count V of the Amended Complaint.

### C. Loss of Consortium

This leaves Count VI of the Amended Complaint, which is Ms. Cook's loss of consortium claim. Defendant recognizes that this claim is "a derivative of

---

*Roberts v. Daystar Sills, Inc.*, 2008 WL 8203205, at *2 (Del. Super. Ct. Dec. 8, 2008) (citing *Delmarva Power & Light v. Stout*, 380 A.2d 1365 (Del. 1977)) ("When a judicial decision or legislative enactment has not established the standard of care, the determination of that standard must be made by the jury.").

[62] *Ridgeway*, 2018 WL 4212140, at *3 (citation omitted).

[63] Reply Brief, at 3, ¶ 3 (Trans. ID. 66318828).

Plaintiff[s'] causes of action."[64]   Hence, Defendant does not contest the loss of consortium claim *per se*.   Because the Court finds that Plaintiffs' negligent hiring and supervision claim survives the instant Motion for Summary Judgment, the Court finds that the derivative loss of consortium claim survives as well.

### V. CONCLUSION

In sum, the Court finds that Plaintiffs cannot invoke the doctrine of *respondeat superior* to establish Defendant's liability.   Pursuant to § 228 of the Restatement (Second) of Agency, Garcia was not acting within the scope of employment when he engaged in a physical altercation with Cook, and Plaintiffs cannot satisfy any of the exceptions in § 219.   But the Court finds that there is a genuine issue of material fact as to whether Defendant was negligent in hiring and supervising Garcia.   Accordingly, Defendant's Motion for Summary Judgment is **GRANTED** as to Counts I, II, III, and IV of the Amended Complaint and **DENIED** as to Counts V and VI of the Amended Complaint.


**IT IS SO ORDERED.**

*Jan R. Jurden*

———————————————————
Jan R. Jurden, President Judge

cc:  Prothonotary

---

[64] *Id.* at 2, ¶ 4. (citation omitted).