**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

DAVID MILLER, )
)
     Plaintiff, )
)
     v. ) C.A. No. N19C-11-173 EMD
)
LEIDOS, INC., and BOSCH )
THERMOTECHNOLOGY CORP., )
)
     Defendants. )

Submitted: September 20, 2024
Decided: October 21, 2024

*Upon Defendant Bosch Thermotechnology Corporation's Motion for Summary Judgment*
***GRANTED***

Kevin A. Guerke, Esq., Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware, Jason A. Itkin, Esq., Cory D. Itkin, Esq., Alexandra F. Poulson, Esq., Arnold & Itkin LLP Houston, Texas. *Attorneys for Plaintiff David Miller.*

William R. Adams, Esq., Dickie, McCamey & Chilcote, Wilmington, Delaware, Nicholas E. Skiles, Esq., Swartz Campbell, Wilmington, Delaware, Robert M. Cook, Esq., Goldberg Segalla, Princeton, New Jersey. *Attorneys for Defendant Bosch Thermotechnology Corporation.*

**DAVIS, J.**

## I.     INTRODUCTION

This civil proceeding involves tort and warranty claims. Plaintiff David Miller's claims arise from an exploding boiler (the "Boiler") and turns on who is ultimately liable for that explosion. Mr. Miller contends that Defendant Leidos, Inc. ("Leidos") and Defendant Bosch Thermotechnology Corporation ("Bosch") are liable for injuries incurred while Mr. Miller serviced the Boiler purportedly designed, manufactured and first sold by Bosch.

Bosch was not originally a defendant in this case.[1] Mr. Miller added Bosch as a defendant in the First Amended Complaint (the "Amended Complaint") filed on April 15, 2020.[2] Mr. Miller asserts three causes of action against Bosch and Leidos: (i) product liability; (ii) breach of warranty; and (iii) negligence.[3] Bosch answered the Amended Complaint on July 9, 2020.[4]

Trial was set for July 15, 2024.[5] Bosch moved for summary judgment on May 31, 2024. The Court denied that motion as untimely.[6] The Court continued the trial date on June 26, 2024, after Mr. Miller and Leidos settled their dispute.[7] Leidos was dismissed as a party on September 6, 2024.[8] The question became how to proceed on the remaining claims against Bosch.

The Court probed the parties on whether Mr. Miller could demonstrate causation with respect to Bosch. The Court noted that Mr. Miller's expert did not opine as to whether Bosch owed and breached a standard of care, or that a breach by Bosch proximately caused Mr. Miller's injuries. Mr. Miller's counsel persuaded the Court that Mr. Miller may be able to demonstrate that Bosch was responsible for Mr. Miller's injuries. The Court, wanting a complete record, invited Bosch to file a new motion for summary judgment which would allow the issues to be fully joined.[9]

Bosch filed Defendant, Bosch Thermotechnology Corporation's Motion for Summary Judgment (the "Motion") on July 16, 2024.[10] On August 20, 2024, Mr. Miller filed Plaintiff's Answering Brief in Opposition to Defendant Bosch Thermotechnology Corporation's Motion for

---

[1] D.I. No. 1 at ¶3.
[2] D.I. No. 9 at ¶3 (hereafter "FAC at __").
[3] *Id.* at ¶8-23.
[4] D.I. No. 15 (hereafter "Def.'s Answer at __").
[5] D.I. No. 161 at 1; D.I. No. 153 at 2.
[6] D.I. No. 153 at 2.
[7] D.I. No. 212.
[8] D.I. No. 219.
[9] D.I. No. 212.
[10] D.I. No. 213 (hereafter "Def.'s MSJ at __").

Summary Judgment (the "Answer").[11]  Bosch filed Defendant Bosch Thermotechnology Corp.'s Reply to Plaintiff's Brief in Opposition to Bosch Thermotechnology Corporation's Motion for Summary Judgment (the "Reply") on September 20, 2024.[12]

After reviewing the Motion, the Answer and the Reply, the Court has determined that a hearing is not necessary.  For the reasons set forth below, the Court **GRANTS** the Motion.

## II.     RELEVANT FACTS

Mr. Miller, a maintenance technician, was injured on January 4, 2018, while working on the Boiler at the National Science Foundation's McMurdo Station in Antarctica.[13]  The Boiler— designed, manufactured and sold by Bosch—exploded, causing Mr. Miller's injuries.[14]  Bosch had sold the Boiler to Lockheed Martin IS&GS ("Lockheed") and shipped the Boiler to Port Hueneme, California on or about July 28, 2016.[15]  Leidos installed the Boiler in Antarctica in August of 2017—about one year later.[16]  During or shortly after installation, a non-party replaced the Boiler's original electronic controller with a programmable Honeywell controller.[17]  Someone failed to restart the Boiler after maintenance was done in late December 2017.[18]  Six days later, Mr. Miller attempted to restart the extinguished boiler by cycling the boiler on and off multiple times.[19]  Mr. Miller was injured when the Boiler exploded during the attempted restart.[20]

---

[11] D.I. No. 215 (hereafter "Pl.'s Ans. at __").
[12] D.I. No. 220 (hereafter "Def.'s Rep. Br. at __").
[13] FAC at ¶4.
[14] *Id.* at ¶¶4, 5, and 7.
[15] Def.'s MSJ at 1; D.I. No. 211 at 3 (hereafter "Pretrial Stip. at __").
[16] *See* Def.'s MSJ at 1; FAC at ¶6.
[17] Def.'s MSJ at 1, 3 and Ex. B at 4.
[18] Def.'s MSJ at 1, 3 and Ex. B at 3.
[19] *See* FAC at ¶7; Def.'s MSJ at 1, 3.
[20] *Id.*

Mr. Miller's experts (the "Experts")[21] opine that the explosion was caused by improper installation of the Boiler or programming of the Honeywell controller.[22] The Experts explain that the Honeywell controller purges flammable gases from the boiler by allowing sufficient time between pre- and post-cycle.[23] Mr. Miller's rapid on-and-off cycling of the boiler caused gas to accumulate within the Boiler.[24] The Experts conclude that the incorrectly programmed Honeywell controller then failed to purge the accumulated gas which caused the Boiler to explode.[25] The Experts concluded that Leidos was responsible for the "installation and setup of the [B]oiler, including the [Honeywell] controller, and thus would be responsible for the cause of the event."[26] The Experts rendered an opinion that Leidos negligently "install[ed] and set up the boiler, including the controller."[27]

Mr. Miller and Bosch were unable to conduct an independent inspection or failure analysis of the boiler because Leidos failed to preserve the boiler as evidence.[28]

Bosch designed, manufactured and sold the boiler; however, Bosch did not design or manufacture the Honeywell controller.[29] The Experts do not opine that Bosch was negligent or that the Boiler was defectively designed or manufactured by Bosch.[30]

---

[21] The Experts are Dr. David Rondinone and Benjamin Gibson. Dr. Rondinone's report is Exhibit B to the Def.'s MSJ. Mr. Gibson's report is Exhibit C to the Def.'s MSJ.

[22] *See* Def.'s MSJ, Ex. B at 4, 6 ("[A]n improperly installed/setup controller is the most likely cause the explosive event . . . the boiler was [likely] not installed per the manufacturer's recommendations."); *see generally* Def. MSJ, Ex. C (explaining Leidos ignored known safety concerns, *e.g.*, Leidos failed to address "an inspection report that the boiler appears to be oversized and does not meet the minimum clearances laid down by the manufacturer").

[23] Def.'s MSJ at 3.

[24] *Id.*

[25] *Id.;* Def.'s MSJ, Ex. C at 4 ("The [replacement controller] settings related to purging the boiler both post-cycle and pre-cycle were found to have been changed from their default settings . . . the lack of sufficient purging allowed for improper fuel conditions which most likely caused the over-pressure event.").

[26] Def.'s MSJ, Ex. B at 6.

[27] *See* Def.'s MSJ, Ex. C.

[28] Pretrial Stip. at 6 ("Leidos performed an internal root cause analysis and apparently inspected the boiler after the explosion, but then Leidos did not take reasonable steps to preserve the subject boiler or have it preserved."); Def's MSJ, Ex. B at 4 (explaining "[b]y the time [Dr. Rondinone] became involved in this project the boiler's post incident condition was not available for direct inspection.").

[29] Def.'s MSJ at 1, 3.

[30] *See* Def.'s MSJ, Ex. B and Ex. C.

## III.     PARTIES' CONTENTIONS

### A. THE MOTION

Bosch moves for summary judgment on all claims.[31]  Bosch argues that there are no genuine issues as to any material fact and that Bosch is entitled to judgment as a matter of law because:

- Mr. Miller's strict product liability claim fails because strict liability claims are unavailable in Delaware.[32]

- Mr. Miller's negligence claim fails as the Experts: (1) failed, in a matter involving sophisticated technology, to opine as to whether Bosch breached the standard of care; and (2) testified to alternative causation attributed solely to another party.[33]

- Mr. Miller's express breach of warranty claims fail as the warranties were validly disclaimed or had otherwise expired.[34]

- Mr. Miller's implied warranty of merchantability claim fails without evidence of a design or manufacturing defect in the product.[35]

- Mr. Miller's implied warranty of fitness for a particular purpose claim fails because the evidentiary record is devoid of any use for a particular purpose.[36]

### B. THE ANSWER

Mr. Miller opposes summary judgment, maintaining that genuine issues of material fact exist, and Bosch is not entitled to judgment as a matter of law.  Mr. Miller contends Bosch is liable for Mr. Miller's injury on claims of: (i) product liability, (ii) negligence, and (iii) breach of warranty.[37]

---

[31] *See generally* Def.'s MSJ; Def.'s Rep. Br.
[32] Def.'s MSJ at 23-24.
[33] Def.'s MSJ at 9-23; Def.'s Rep. Br. at 2-7.
[34] Def.'s MSJ at 24.
[35] *Id.* at 25-29; Def.'s Rep. Br. at 7-8.
[36] Def.'s MSJ at 25-26, Def.'s Rep. Br. at 29-31.
[37] *See generally* FAC at 1-5; Pl.'s Answer at 8-22.

5

Mr. Miller maintains that "expert testimony is not required to establish the standard of care when a layman, exercising his common sense, is perfectly competent to determine whether there was negligence."[38] Mr. Miller emphasizes that proximate cause is determinable without expert testimony.[39] Mr. Miller also argues *res ipsa loquitur* applies here because "[a]t the very least, there is a materially disputed fact whether" a defect in the Boiler caused the explosion.[40] Mr. Miller supports the *res ipsa loquitur* argument by claiming that "the [B]oiler was under Bosch's control when the negligence occurred . . . [and the Boiler] was defective from the initial installation."[41]

Additionally, the Answer notes that:

- "[Mr. Miller] is not responsible for the event leading up to the explosion . . . [because] [Mr. Miller] was obviously not involved in the [Boiler's] design or manufacturing process."[42]

- "[The Boiler was] brand new."[43]

- "Bosch took no steps to eliminate this hazard. Instead, it waited until after the catastrophic explosion that injured [Mr. Miller] to discontinue the . . . [B]oiler."[44]

- "[I]t is undisputed that [Mr. Miller's] injuries were caused by [the Boiler] that exploded."[45]

- "Bosch cannot show that the terms and conditions allegedly excluding the implied warranties were included in the purchase order or that the purchaser actually accepted the terms."[46]

---

[38] Pl.'s Ans. at 8-9.
[39] *Id.* at 9.
[40] *Id.* at 10-13.
[41] *Id.* at 11.
[42] *Id.*
[43] *Id.* at 14.
[44] *Id.* at 16.
[45] *Id.* at 18 (emphasis added).
[46] *Id.* at 19; *but see* Def.'s MSJ, Ex. E (confirming the July 21, 2016, order of the Boiler and that Lockheed accepts the Bosch Terms and Conditions of Sale terms and conditions by accepting the Boiler).

## IV. STANDARD OF REVIEW

The standard for review on a motion for summary judgment is well-settled. Summary judgment may only be granted when there are no genuine disputes as to material facts.[47] Specifically, the Court must "view the evidence in the light most favorable to the non-moving party."[48] When faced with a motion for summary judgment the trial court must "identify disputed factual issues whose resolution is necessary to decide the case, but not to the decide such issues."[49] The moving party bears the initial burden of proving that there are no material issues of fact.[50] If the motion is properly supported then the burden shifts to a non-moving party to demonstrate that a material issue of fact is present.[51]

The Court may deny summary judgment if "the Court concludes a more thorough inquiry into, or development of, the facts[ ] would clarify the law or its application."[52] Without a genuine dispute of material fact, however, there is no need for a trial; the movant is entitled to judgment as a matter of law.[53]

## V. DISCUSSION

Mr. Miller asserts claims of: (i) product liability, (ii) negligence, and (iii) breach of warranty. Bosch must demonstrate that when the record is reviewed in a light most favorable to Mr. Miller, there are no genuine issues of material fact as to each element of each claim.

---

[47] *Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 99 (Del. 1992) (citing *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979)).
[48] *Id.* (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)).
[49] *Id.* (citing *United States v. Diebold, Inc.*, 369 U.S. 654 (1962)).
[50] *Moore*, 405 A.2d 679, 680 (Del. 1979) (citing *Ebersole v. Lowengrub*, 180 A.2d 467 (Del. 1962)).
[51] *Id.* (citing *Hurtt v. Goleburn*, 330 A.2d 134 (Del. 1974)).
[52] *US Dominion, Inc. v. Fox News Network, LLC*, 293 A.3d 1002, 1034–35 (Del. Super. 2023).
[53] *See Celotex* 477 U.S. at 327 ("A right exists to have claims which are adequately based in fact tried to a jury."); *see also Burkhart*, 602 A.2d at 59 ("The Superior Court's Civil Rules are patterned upon the Federal Rules of Civil Procedure."); *Unbound Partners Ltd. P'ship v. Invoy Holdings Inc.*, 2021 WL 1016442, at *4 (Del. Super. Mar. 17, 2021) ("[A] matter should be disposed of by summary judgment whenever ... a trial is unnecessary."; *cf. Merrill*, 606 A.2d at 99 (explaining "[t]he role of a trial court when faced with a motion for summary judgment is to identify disputed factual issues whose resolution is necessary to decide the case, but not to decide such issues.").

As discussed below, the Court will grant the Motion.  Mr. Miller has ably characterized the issues in a way that the Court could find that expert testimony is unnecessary as to the claims against Bosch.  The reality is that defective design and manufacture of a commercial boiler is outside the knowledge of the average layperson or juror.  The case against Bosch is one relating to the design and manufacture of the Boiler.  Expert testimony is necessary on the standard of care and whether that standard was breached in a technical case like this.[54]  Mr. Miller has been unable produce that expert testimony.  As such, the Court cannot let this matter proceed to trial against Bosch.

### A. BOSCH IS ENTITLED TO SUMMARY JUDGMENT ON MR. MILLER'S PRODUCT LIABILITY CLAIM.

The Court holds that Mr. Miller's product liability claim fails as a matter of law as Delaware does not recognize strict product liability.[55]  In addition, Mr. Miller conceded dismissal of the product liability claim by failing to respond to Bosch's arguments in the Answer.[56]

### B. BOSCH IS ENTITLED TO SUMMARY JUDGMENT ON MR. MILLER'S NEGLIGENCE CLAIM.

To establish a claim of negligence, Mr. Miller must prove: (i) Bosch owed Mr. Miller a duty of care; (ii) Bosch allegedly breached that duty; (iii) Mr. Miller was injured; and (iv) Bosch's alleged breach was the actual and proximate cause of Mr. Miller's injuries.[57]  The Court finds that the negligence claim fails because Mr. Miller has not, through expert testimony, demonstrated that Bosch (i) owed a duty of care to Mr. Miller, and (ii) Bosch breached that duty

---

[54] *See, e.g., Ridgeway v. Acme Markets, Inc.*, 2018 WL 4212140, at *3 (Del. 2018) ("[W]hen the standard of care requires resort to technical or other complex principles, the plaintiff must establish the standard of care through expert testimony").

[55] *Crawford v. Syngenta Crop Prot., LLC*, 2024 WL 2831554, at *8 (Del. Super. May 31, 2024) ("There is 'no cause of action for strict products liability under Delaware law.'").

[56] *See* Def.'s Rep. Br. at 2 (noting Plaintiff did not respond to Point III E. of Defendant's principal brief); *see also* Pl.'s Answer (showing Plaintiff did not respond to Point III E. of Defendant's principal brief); Del. Super. Ct. R. 8(d).

[57] *Salinardo v. Bear Trap Spirits, Inc.*, 2023 WL 5310444, at *3 (Del. Super. Ct. Aug. 17, 2023) (citing *Campbell v. DiSabatino*, 947 A.2d 1116, 1117 (Del. 2008)).

of care in a way that actually and proximately caused Mr. Miller's injuries. Moreover, the Court holds that Mr. Miller's *res ipsa loquitor* argument fails on the facts as (i) the Experts opined that reasonable alternative causation exists, and (ii) the Boiler was not in Bosch's control at the time of the accident.

### 1. Mr. Miller Failed to Establish Any Standard of Care and Breach by Bosch.

A plaintiff must establish the standard of care through expert testimony when that standard requires resorting to technical or complex principles.[58] A plausible negligent explanation may sometimes be sufficient.[59] But the mere fact that an accident occurred is not proof of a defendant's negligence.[60] The Court finds that the negligence claim fails as a matter of law because Mr. Miller failed to establish a standard of care through expert testimony.

The Experts offer no opinions as to what duty Bosch allegedly breached.[61] The Experts are silent as to any causal (actual or proximate) link between the alleged conduct of Bosch and Mr. Miller's injury.[62] Mr. Miller's case against Bosch is a case involving the purported negligent

---

[58] *Ridgeway*, 2018 WL 4212140, at *3 ("[W]hen the standard of care requires resort to technical or other complex principles, the plaintiff must establish the standard of care through expert testimony"); *Riad v. Brandywine Valley SPCA, Inc.*, 319 A.3d 878, 889-90 (Del. 2024) (overturning the Superior Court's requirement of experts to prove negligence where a jury could determine the defendant failed to "[act] with reasonable prudence in its handling of a domestic animal with known vicious propensities [because] . . . that standard is not outside the ken of the average layperson."); *State Farm Fire & Cas. Co. v. Middlebury Corp.*, 2011 WL 1632341, at *5 (Del. Super. Apr. 12, 2011) (noting a plaintiff's proffer of evidence as to where a fire originated within a piece of machinery does not necessarily warrant an inference of negligence . . . [where] the [c]ourt has no knowledge of the internal workings of [the product], nor how those components can catch fire when [the product] is not in active use), *reh'g denied*, 2011 WL 2462661, at (Del. Super. June 15, 2011); *Jackson v. Hopkins Trucking Co., Inc.*, 2010 WL 3397478, at *4 (Del. Aug. 30, 2010) (TABLE) (holding that "expert testimony is required to establish the standard of care applicable to a pre-trip inspection of a trailer because laypersons are not familiar with the frequency, method, and requirements for conducting pre-trip inspections of commercial trucks and trailers to be used in off-loading cargo at a port."); *Delmarva Power & Light v. Stout,* 380 A.2d 1365, 1367 (Del.1977) ("[E]xpert testimony is only relevant when the matter in issue is not one of common knowledge").

[59] *Ridgeway*, 2018 WL 4212140, at *4; *Hazel v. Delaware Supermarkets, Inc.*, 953 A.2d 705, 711 (Del. 2008) (finding that a plausible negligent explanation is enough to prevent summary judgment and that an expert is not required for a slip on a wet floor).

[60] *Ridgeway*, 2018 WL 4212140, at *4 (noting plaintiff must point to some breach of the duty of care—offer evidence of Defendant's negligent acts "or how any negligence caused her harm"—instead of merely relying on the fact that she: (1) she slipped and fell on ice in a parking lot and (2) did not see salt within an undefined area).

[61] Def.'s MSJ at 11.

[62] *Id.*

design and manufacture of a commercial boiler and its subsequent failure—*i.e.*, a complex negligence case. The Court cannot accept that this is the type of situation where a jury can, without the assistance of expert testimony, factually conclude that Bosch defectively designed or manufactured the Boiler in a manner that caused the explosion.[63] Therefore, Mr. Miller's negligence claim fails as a matter of law without a breach of the standard of care established by expert testimony.

### 2. *Res Ipsa Loquitor is Inapplicable where Alternative Causation Exists.*

Mr. Miller resorts to a *res ipsa loquitur* argument. The Court finds this fails because Mr. Miller cannot show that Bosch's purported negligence is the only logical explanation for the Boiler's explosion and Mr. Miller's injuries.[64] Specifically, the Experts testified that: (i) Leidos' negligence caused the accident, and (ii) the Boiler was not in Bosch's control.[65]

*Res ipsa loquitur* is a circumstantial evidence rule permitting the trier of fact to infer negligence.[66] The Court must determine whether a reasonable person could find the injury was more likely than not caused by negligence, and the circumstances would permit a reasonable person to conclude the injury was caused by negligence on the part of the defendant."[67] But *res ipsa loquitur* is not applicable "if [the] circumstances are as consistent with the absence of negligence as with the existence of negligence."[68]

---

[63] *Id.* at 18.

[64] *Id.* at 13.

[65] Def.'s MSJ, Ex. B at 4, 6 ("[A]n improperly installed/setup controller is the most likely cause the explosive event"); Def.'s MSJ, Ex. C at 14-15 (explaining "Leidos had been informed . . . and was aware of the potential hazards presented by the subject boiler. Leidos had control over the boiler and . . . Leidos did not correct and address these known safety concerns.").

[66] D.R.E. 304(a)(1); *Williams v. Dyer*, 1992 WL 240477, at *2 (Del. Super. Aug. 12, 1992) (explaining *res ipsa loquitur* may be used to help make out a *prima facie* case for negligence).

[67] *Verizon v. Seck*, 2017 WL 4317257, at *2 (Del. Super. Sept. 2017) (internal citations omitted).

[68] *Id.* at *1; *see also Newark Square, LLC v. Ladutko*, 2017 WL 544606, at *2 (Del. Super. Feb. 10, 2017) (granting the defendant's motion for summary judgment as the elements of *res ipsa loquitor* were not satisfied where plaintiff had "made no specific showing of negligence" by failing to produce: (i) any expert or factual witness testimony that indicates that the alleged faulty wiring existed as a result of negligence; and (ii) any evidence opining that the faulty wiring was the proximate cause of the damage).

10

*Res ipsa loquitur* is not available when the product is not in the defendant's control.[69] Moreover, *res ipsa loquitur* "does not affect a plaintiff's burden of proof or create a presumption of negligence."[70] *Res ipsa loquitur* cannot excuse or remedy "failure to pursue necessary expert analysis of circumstantial evidence that was readily available to it."[71] Finally, *res ipsa loquitur* does not apply where the plaintiff's experts do not theorize on probable causes of the accident, and a jury cannot attribute the accident to a defect in the product in the absence of expert testimony.[72]

One Expert, Dr. Rondinone, does not conclude Bosch was negligent.[73] Instead, Dr. Rondinone opined the most likely cause of the event was an improperly installed Boiler, including the Boiler's controller.[74] Leidos installed the Boiler and the Boiler's controller.[75] Likewise, Bosch did not manufacture or maintain the Honeywell controller.[76] Another Expert, Mr. Gibson, determined that "Leidos failed to provide and maintain a reasonably safe workplace/safe environment for the personnel working at their site."[77] Bosch was not responsible for the Antarctica facility.

---

[69] *Rice v. Rice*, 2020 WL 4908096, at *4 (Del. Super. Aug. 20, 2020) (holding res ipsa loquitur is not applicable where the accident occurred fourteen days after the plaintiff's vehicle left the defendant's control because it is possible that something else could have caused the accident); *Newark Square*, 2017 WL 544606, at *2 (noting that where a burner fire occurred, Plaintiff needed to produce expert testimony of the fire marshal citing negligent activity on the part of the Defendant to proceed under the theory of res ipsa loquitur*); Seck,* 2017 WL 4317257, at *2 n.13 (noting a lack of clarity of what level of control the defendant had over the equipment during the period preceding the fire).
[70] *State Farm*, 2011 WL 1632341, at *4; D.R.E. 304(a).
[71] *State Farm*, 2011 WL 1632341, at *6.
[72] *Id.* at *3 (noting the defendants were entitled to summary judgment where the plaintiff had not offered any evidence to support claims that moving defendants' acts, omissions, or products caused the fire).
[73] Def.'s MSJ at 15; *see generally* Def.'s MSJ, Ex. B.
[74] Def.'s MSJ at 14, 16; Def.'s MSJ, Ex. B at 6 ("[A]n improperly installed / setup controller is the most likely cause the explosive event . . . the boiler was [likely] not installed per the manufacturer's recommendations."); Def.'s MSJ, Ex. H at 61-62 ("I still think that's the most likely scenario.").
[75] Def.'s MSJ at 14; Def.'s Ex. B at 6 ("Leidos had responsibility for the installation and setup of the boiler, including the controller.").
[76] Def.'s MSJ at 15.
[77] *See* Def.'s MSJ, Ex. C at 10.

Even if these elements of *res ipsa loquitur* were satisfied, Mr. Miller's *res ipsa loquitur* argument fails because Mr. Miller cannot show that the Boiler was in Bosch's control. The Court notes that the Boiler was sold by Bosch to Lockheed and delivered to Lockheed in California on July 28, 2016. Subsequently, Leidos installed the Boiler in Antarctica in August of 2017. Around that time, someone installed the Honeywell controller on the Boiler. Therefore, the undisputed evidence demonstrates the Boiler was no longer under the management or control of Bosch at the time of the incident.[78]

## C. MR. MILLER'S BREACH OF EXPRESS WARRANTY CLAIM FAILS AS A MATTER OF LAW.

"Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."[79] "[W]arranty provisions [are] to be construed and applied liberally in favor of a buyer of goods."[80]

The Boiler has a written warranty policy (the "Warranty Policy").[81] The Warranty Policy expressly sets out the Boiler's warranty terms and conditions.[82] The buyer, Lockheed, agreed to the terms and conditions of the Warranty Policy by accepting the Boiler.[83] The terms and conditions provide that the express warranty was for one year.[84] As such, the Warranty Policy expired on July 26, 2017.[85] Moreover, the Warranty Policy would have been void, excluding

---

[78] Def.'s MSJ at 22; Def.'s Ex. B at 6 ("It is my understanding that Leidos had responsibility for the installation and setup of the boiler, including the controller, and thus would be responsible for the cause of the event."); Def.'s Ex. C at 14 ("Leidos had control over the boiler.").
[79] 6 *Del. C.* §2-313(a).
[80] *Bell Sports, Inc. v. Yarusso*, 759 A.2d 582, 592 (Del. 2000).
[81] *See* Def.'s Ex. F at 1 (hereafter "Warranty Policy at __").
[82] *See id.*
[83] *See* Pretrial Order at 3, June 25, 2024 (establishing no dispute exists that Bosch shipped the boiler to Lockheed Martin IS&GS in Port Hueneme, California on or about July 28, 2016); *see also* Def.'s Ex. E.
[84] Def.'s MSJ at 24; Warranty Policy at 1 ("[Bosch] warrants all Goods manufactured by it to be free from defects in material and workmanship for one year from the . . . date of purchase if the date can be established by an invoice.").
[85] Def.'s MSJ at 25.

expiration, because: (1) the selection of the wrong product settings,[86] (2) improper installation of the boiler,[87] and (3) the use of a controller not sold and distributed by Bosch.[88]  Under these facts, the Court holds that Bosch is entitled to judgment on Mr. Miller's express warranty claim.

### D. Mr. Miller's Breach of Implied Warranty Claims Fail as a Matter of Law.

Plaintiff's claims for implied warranties of fitness and merchantability fail because they were both expressly excluded.[89]  To properly exclude an implied warranty under Delaware law, the exclusion must be: (i) in writing and (ii) conspicuous.[90]  Bosch complied with the requirements of Delaware law by presenting the exclusion in writing in the Warranty Policy.[91]

#### 1. Mr. Miller's Implied Warranty of Fitness for A Particular Purpose Claim Fails as a Matter of Law.

To prevail on a claim for breach of implied warranty of fitness for a particular purpose, Mr. Miller must prove: (1) there was a particular purpose for the product; (2) Bosch had reason to know of that purpose; (3) Bosch had reason to know of reliance on Bosch's superior skill to select goods that fulfilled that purpose; and (4) reliance on Bosch's superior skill.[92]  Expert testimony is required to prove that a highly technical product is defective.[93] "Even when the

---

[86] Warranty Policy at 2 ("Types of failures which are not attributable to defects in materials and/or workmanship and which are not considered by [Bosch] as part of its warranty include . . . [d]amage due to . . . selection [of] the wrong product settings.").

[87] *Id.* ("Types of failures which are not attributable to defects in materials and/or workmanship and which are not considered by [Bosch] as part of its warranty include . . . Improper installation.").

[88] *Id.* ("The foregoing warranty does not cover . . . products altered, disassembled or repaired by anyone other than [Bosch] personnel, [Bosch] authorized factory service center personnel or persons so designated in writing by [Bosch]'s Customer Service Department prior to commencement of said work.").

[89] 6 *Del. C.* § 2-316; 6 *Del. C.* § 2-314(1) (stating implied warranty of merchantability claims are only recognized if not excluded or modified); 6 *Del. C.* § 2-315 (noting implied warranty of fitness for a particular purpose claim are only recognized if not excluded or modified).

[90] *Id.*

[91] *Id.;* Warranty Policy at 2.

[92] *Johnson v. Sleepy's Holdings, L.L.C.*, 2015 WL 3429518, at *2 (Del. Super. May 28, 2015); *Katz v. Tractor Supply Co., Inc.*, 2020 WL 1287754, at *2 (Del. Super. Mar. 16, 2020) (explaining the "implied warranty of fitness for a particular purpose arising from a product's defect requires proof that the product was actually defective and that the defect caused the injury.").

[93] *Katz*, 2020 WL 1287754, at *2 (explaining expert testimony is always required "[i]f the matter in issue is one within the knowledge of experts only and not within the common knowledge of laymen.").

matter is one within the common knowledge of laypeople, expert testimony is necessary unless circumstantial evidence tends 'to negate other reasonable causes of the injury sustained.'"[94]

Mr. Miller cannot create a genuine issue as to a material fact that the Boiler was used for a particular purpose beyond that of any other boiler. Use of a product in the same manner as the product was intended to be used does not create a "particular purpose."[95] Likewise, Mr. Miller has failed to provide sufficient evidence of reliance upon Bosch's expertise to select the Boiler.[96] Finally, Mr. Miller has no expert opinion that the Boiler sold by Bosch was defective at the time of sale.[97]

### 2. *Plaintiff's Implied Warranty of Merchantability Claim Fails as A Matter of Law.*

To prevail on a claim for breach of implied warranty of merchantability, Mr. Miller must satisfy the following elements: "(1) that a merchant sold the goods; (2) which were defective at the time of sale; (3) causing injury to the ultimate consumer; (4) the proximate cause of which was the defective nature of the goods; and (5) that the seller received notice of the injury."[98] A good is merchantable when "fit for ordinary purpose for which such goods are used."[99] Expert testimony is generally necessary to prove causation in an implied warranty of merchantability claim.[100] But circumstantial evidence can be used if it tends to negate other reasonable causes of the injury sustained.[101]

As previously discussed, Mr. Miller provides no expert testimony to show that the Boiler, when sold by Bosch, was defective. Likewise, Mr. Miller has not presented sufficient

---

[94] *Id.* (quoting *Reybold*, 721 A.2d at 1270).
[95] Def.'s MSJ at 30.
[96] Def.'s MSJ at 31.
[97] S*ee generally* Def.'s Ex. B; Def.'s Ex. C.
[98] *Reybold*, 721 A.2d at 1269; *Salinardo*, 2023 WL 5310444, at *4 (citing *Abbate v. Werner Co.*, 2012 WL 1413524, at *2 (Del. Super. Jan. 19, 2012)).
[99] *Salinardo*, 2023 WL 5310444, at *4 (citing *Hyatt v. Toys "R" Us, Inc.*, 2007 WL 1970075, at *2-3 (Del. 2007)).
[100] Def.'s MSJ at 28.
[101] *Reybold*, 721 A.2d at 1270 (explaining expert testimony is required where circumstantial evidence cannot "negate other reasonable causes of the injury sustained.").

circumstantial evidence to negate other reasonable causes for the incident to show the Boiler was somehow defective. Instead, the Experts offer alternative reasons for the Boiler's explosion: (1) improper Boiler installation, (2) improperly installed and/or programmed electronic controller.[102]

## VI.    CONCLUSION

For the reasons set out above, the Court **GRANTS** the Motion.


**IT IS SO ORDERED**

Dated: October 21, 2024
Wilmington, Delaware

/s/ Eric M. Davis
Eric M. Davis, Judge


cc:    File&ServeExpress

---

[102] Def's MSJ, Ex. B at 6.

15