# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

THE CUMBERLAND MUTUAL )
FIRE INSURANCE COMPANY, a/s/o )
AMANDA and SCOTT CLIPPINGER, )
                                  )
      Plaintiff, )
                                  )
        v. )       C.A. No. N23C-07-100 FWW
                                  )
BROAN-NUTONE, LLC and )
JAKEL MOTORS, INC., )
                                  )
      Defendants. )

Submitted: March 21, 2025
Decided: March 31, 2025

*Upon Defendants Broan-Nutone, LLC's and Jakel Motors, Inc.'s Motion for Summary Judgment*
**GRANTED.**

*Upon Defendants Broan-Nutone, LLC's and Jakel Motors, Inc.'s Motion in Limine to Exclude Evidence of Other Bathroom Fan Fires*
**MOOT.**

*Upon Defendants Broan-Nutone, LLC's and Jakel Motors, Inc.'s Motion in Limine to Exclude Christopher Graham from Testifying About Alternate Bathroom Fan Designs*
**MOOT.**

*Upon Plaintiffs' Motion in Limine to Preclude Evidence that the Fan was Not the Subject of Recall*
**MOOT.**

*Upon Plaintiffs' Motion in Limine Requesting a Jury Instruction on the Doctrine of Res Ipsa Loquitor*
**MOOT**

# MEMORANDUM OPINION

David G. Culley, Esquire, TYBOUT REDFERN & PELL, Rockwood Office Park, 501 Carr Road, Suite 300, Wilmington, DE 19809, Attorney for Plaintiff The Cumberland Fire Insurance Company a/s/o Amanda and Scott Clippinger.

Brett D. Fallon, Esquire, Jaclyn C. Marasco, Esquire FAEGRE DRINKER BIDDLE & REATH, LLP, 222 Delaware Avenue, Suite 1410, Wilmington, DE 19801; Andrew G. Jackson, Esquire (*pro hac vice*), Hannah R. Anderson, Esquire (*pro hac vice*), Anthony F. Jankowski, Esquire (*pro hac vice*) FAEGRE DRINKER BIDDLE & REATH, LLP, 2200 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN 55401, Attorneys for Defendants Broan-Nutone, LLC and Jakel Motors, Inc.

**WHARTON, J.**

# I.     INTRODUCTION

Plaintiff, The Cumberland Mutual Fire Insurance Company ("Cumberland") brings this negligence action as subrogee of Amanda and Scott Clippinger (the "Clippingers") to recover insurance proceeds it paid to the Clippingers as a result of a fire that substantially damaged their home. The source of the fire was determined to be a bathroom exhaust fan manufactured by the Defendants Broan-Nutone, LLC ("Broan-Nutone") and Jakel Motors, Inc. ("Jakel") (collectively "Defendants"). Cumberland alleges that the fire was caused by the negligent design and/or manufacture of the fan. The Defendants move for summary judgment arguing that Cumberland lacks expert testimony necessary to establish the applicable standard of care. Both sides also have submitted two motions *in limine* each. After carefully considering the parties arguments and the record before it, the Court **GRANTS** the Defendants Motion for Summary Judgment. As a result all of the motions *in limine* are **MOOT.**

## II.     FACTS AND PROCEDURAL HISTORY

Cumberland, as subrogee of the Clippingers, brings this action alleging a single count of negligence to recover the money it paid to the Clippingers as a result of fire damage to their residence.[1] It alleges both Defendants were negligent in designing and/or manufacturing a bathroom ceiling fan which it claims caused the

---

[1] Compl. at ⁋ 18, D.I. 1.

fire.[2]

The parties dispute whether the fire was caused by the fan – Cumberland, through its expert Christopher Graham ("Graham"), argues it was,[3] while the Defendants, through its expert Thomas C. Wenzel ("Wenzel") maintains that the cause of the fire is undetermined.[4] Apart for that obviously fundamental issue, which is not dispositive of this motion, there appears to be little that is controverted.

The Defendants suggest the determinative undisputed facts are:

1.    The Subject Fan is a Model 763RL fan with a Jakel motor that was manufactured in or around 2000.

2.    The only industry standard applicable to the Subject Fan or motor identified by expert witnesses in this case are Underwriters Laboratories ("UL") Standards 507 (Standard of Safety for Electric Fans), 1004 (Standard for Safety for Electric Motors), 2111 (Standard of Safety for Overheating Protection for Motors), and 1020 (Standard for Safety for Thermal Cutoffs for Use in Electrical Appliances and Components).

3.    The Model 763RL fan was UL listed to UL Standard 507, indicating that it passed all UL testing requirements prior to distribution into the stream of commerce.

4.    Every component of the Model 763RL fan, including the motor, was also tested by UL and was UL recognized.[5]

---

[2] *Id.* at ⁋ 13.
[3] Pls.' Resp., Ex. B, D.I. 66.
[4] Defs.' Mot. for Summ. J., Ex. C, D.I. 61.
[5] *Id.* at 1-2 (citations to the record omitted.).

4

Cumberland suggests that the following facts, whether disputed or not are relevant to the Motion:

1.  Defendant Broan-Nutone designed and manufactured the subject Model 763RL bathroom fan which contained a motor designed and manufactured by Jakel Motors, Inc.

2.  The bathroom fan weas installed in the Clippinger home sometime in or around June of 2000.

3.  The bathroom fan was never altered, modified, repaired or replaced before the fire that occurred on November 13, 2021.

4.  The bathroom fan functioned normally, as did an identical fan in another part of the house, up until the time of the fire.

5.  Broan does not specify or limit the lifespan of its bathroom fans.

6.  The fire that occurred on November 13, 2021 originated in the subject bathroom fan.

7.  The fire was caused by a short circuit/arcing that occurred in the motor windings of the fan, igniting nearby combustible materials.

8.  The short circuit/arcing likely occurred due to a breakdown in the varnish used to insulate the motor windings.

9.  A reasonable inference can be drawn from the above that the breakdown of the varnish occurred due to a design or manufacturing defect.

10. Defendants have retained an expert witness – Thomas Wenzel – who has challenged the finding of

5

arcing and opined that, for various reasons, the fire must be classified as "undetermined."

11. There have been numerous fires originating in the Broan bathroom fans, including those, like the subject fan, that use the shaded-pole motor and the same air flow configuration, some of which occurred as a result of arcing in the motor windings.[6]

Defendants moved for summary judgment on February 14, 2025.[7] Both sides have submitted two motions *in limine*. Cumberland moves to preclude evidence that the fan was not the subject of a recall[8] and for a jury instruction on the doctrine of *res ipsa loquitor*.[9] The Defendants move *in limine* to exclude evidence of other bathroom fan fires[10] and to prevent Cumberland's expert Graham from testifying about bathroom fan designs.[11] Briefing was completed on all motions on March 21, 2025. Because it is a dispositive motion, the Court addresses the Defendants' Motion for Summary Judgment first.

### III. STANDARD OF REVIEW

Superior Court Civil Rule 56(c) provides that summary judgment is appropriate when, "there is no genuine issue as to any material fact and that the

---

[6] Pls.' Resp. at 2-3, D.I. 66.
[7] Defs.' Mot. for Summ. J., D.I. 61.
[8] D.I. 57.
[9] D.I. 60.
[10] D.I. 62.
[11] D.I. 63.

moving party is entitled to a judgment as a matter of law."[12]  The moving party

initially bears the burden of demonstrating that the undisputed facts support its

claims or defenses.[13]  If the moving party meets its burden, the burden shifts to the

non-moving party to show that there are material issues of fact the ultimate fact-

finder must resolve.[14]  When considering a motion for summary judgment, the

Court's function is to examine the record, including "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if

any," in the light most favorable to the non-moving party to determine whether

genuine issues of material fact exist "but not to decide such issues."[15]  Summary

judgment will only be appropriate if the Court finds there is no genuine issue of

material fact.  When material facts are in dispute, or "it seems desirable to inquire

more thoroughly into the facts, to clarify the application of the law to the

circumstances," summary judgment will not be appropriate."[16]  However, when the

facts permit a reasonable person to draw but one inference, the question becomes

---

[12] Super. Ct. Civ. R. 56(c); *Buckley v. State Farm Mut. Auto. Ins. Co.*, 139 A.3d 845, 847 (Del. Super. Ct. 2015), aff'd, 140 A.3d 431 (Del. 2016) (quoting *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979)).
[13] *Sizemore*, 405 A.2d at 681.
[14] *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995).
[15] Super. Ct. Civ. R. 56(c); *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99-100 (Del. 1992).
[16] *Ebersole v. Lowengrub*, 180 A.2d 467, 468-60, (Del. 1962) (citing *Knapp v. Kinsey*, 249 F.2d 797 (6th Cir. 1957)).

one for decision as a matter of law.[17]  Where the parties have filed cross motions for summary judgment and have not argued that there is an issue of material fact to the disposition of either motion, the Court will treat the motions as a stipulation for decision on the merits based on the record submitted with the motions.[18]

## IV. THE PARTIES' CONTENTIONS

### A. The Defendants' Contentions

In their Motion for Summary Judgment, the Defendants argue Cumberland's negligence claim fails because Cumberland lacks a qualified expert who can provide the necessary testimony on the applicable standard of care or whether either Defendant breached that standard of care.[19]  Normally, the standard of care applicable to negligence actions is that exercised by a reasonably prudent person under all of the circumstances.[20]  But, they claim expert testimony is necessary to establish the standard of care here because "the design and manufacture of a fan manufactured  20 years ago are not topics that are within the common juror's knowledge and understanding."[21]  Cumberland's experts do not supply the requisite standard of care testimony because their opinions were "narrowly focused on

---

[17] *Wooten v. Kiger*, 226 A.2d 238, 239 (Del. 1967).
[18] Super. Ct. Civ. R. 56(h).
[19] Defs.' Mot. For Summ. J., at 3, D.I. 61.
[20] *Id.* (citing *Delmarva Power & Light v. Stout,* 380 A.2d 1365, 367 (Del. 1977)).
[21] *Id.* at 4.

8

determining the cause and origin of the fire."[22] The Defendants' position is that they offered the only standard of care evidence in the form of UL testing requirements and there is no evidence those standards were breached.[23]

## B. **Cumberland's Contentions**

Cumberland responds that the applicable standard of care that all defendants must follow is that of a reasonably prudent man.[24] Quoting *McLaughlin v. Dover Downs, Inc.,*[25] it maintains that this standard applies equally to product liability cases:

> A manufacturer has a duty to use **reasonable care** to design its products to be safe for normal use. A manufacturer is negligent if it fails to exercise **reasonable care** in making its product such that the product contains a manufacturing defect when placed in the stream of commerce. However, the mere fact that an accident occurs or that the product is defective does not mean that the manufacturer was negligent. The test is whether the manufacturer used the **reasonable skill, care, and diligence of an ordinarily prudent manufacturer** in making the product.[26]

The reasonably prudent person standard is applicable and need not be established by expert testimony because: (1) the facts here did not involve the conduct of a professional as was the case in many of the cases cited by the Defendants; and (2)

---

[22] *Id.* at 5.
[23] *Id.* at 6.
[24] Pls.' Resp. at 4, D.I. 66.
[25] 2008 WL 2943392 (Del. Super. Ct. July 17, 2008).
[26] Pls.' Resp. at 4 (quoting *McLaughlin* at *10 (emphasis added by Cumberland)).

Cumberland had identified though expert testimony the nature of the defect in the bathroom fan – a short circuit or arcing in the motor windings likely caused by a breakdown in the varnish used to insulate the windings.[27] "The issue is not one beyond the ken of an ordinary jury."[28]

## V. DISCUSSION

When it cited *Mclaughlin*, Cumberland correctly identified the standard of care – "The test is whether the manufacturer used the **reasonable skill, care, and diligence of an ordinarily prudent manufacturer** in making the product."[29] But, it is difficult to square this correct statement of the law with Cumberland's position that the standard of care that all defendants must follow is that of a reasonably prudent person.[30] Cumberland fails to explain how a reasonably prudent person is able to know what reasonable skill, care, and ordinary prudence is required in the design and manufacture of bathroom fans. All reasonably prudent people are not reasonably prudent manufacturers. A reasonably prudent person might become a reasonably prudent manufacturer but only upon developing the skills, care, and diligence necessary to manufacture a particular product. Merely possessing a common character trait – prudence – is insufficient.

---

[27] *Id.* at 5.
[28] *Id.*
[29] Pls.' Resp. at 4 (quoting *McLaughlin* at *10 (emphasis added by Cumberland)), D.I. 66.
[30] *Id.*

Determining the standard of care does not end the inquiry, however. The Court must determine if an ordinary juror is able to evaluate whether the Defendants used the reasonable skill, care, and diligence of an ordinarily prudent manufacturer of bathrooms fans in the manufacture of the subject fan without the benefit of expert testimony as to what skill, care, and diligence a reasonably prudent manufacturer would use. It is not enough that the fan was defective, as *McLaughlin* teaches, but Cumberland must prove that the Defendants were negligent in manufacturing it. An ordinary juror simply cannot make that determination because an ordinary juror lacks the technical and specialized knowledge of the design and manufacturing process necessary to form a judgment as to whether the Defendants were negligent. Expert testimony is necessary.

Delaware case law supports this conclusion. The Delaware Supreme Court observed in *Ridgeway v. Acme Markets, Inc.,* that "The jury typically decides the standard of care and its breach when the facts are within their common knowledge. But, when the standard of care requires resort to technical or other complex principles, the plaintiff must establish the standard of care through expert testimony."[31] That Court surveyed Delaware cases addressing the issue, noting that

---

[31] 2018 WL 4212140 at *3 (Del. 2018)

some required expert testimony to establish the standard of care while others did not, depending on the facts of the given case.[32] What comes through from these cases is

[32] *Id.* at n. 18 (citing *Robinson v. J.C. Penney Company*, 977 A.2d 899, 2009 WL 2158106, at *1 (Del. 2009) (TABLE) (holding that an expert was required to show the standard of care owed by a security guard to a suspected shoplifter since "the standard of care applicable to a professional can be established only through expert testimony"); *Abegglan v. Berry Refrigeration*, 2005 WL 6778336, at *2-3 (Del. Super. Dec. 2, 2005) (holding that because a tradesman repairing an ice machine is a professional the plaintiff needed an expert to establish the standard of care); *Vohrer v. Kinnikin* 2014 WL 123270, at *3-4 (Del. Super. Feb. 26, 2014) (holding that an apartment's untrained maintenance man is not a professional but that an expert witness was still required for a claim related to electrical circuitry); *Roberts v. Daystar Sills, Inc.*, 2008 WL 8203205, at *3 (Del. Super. Dec. 8, 2008) (requiring an expert witness in a construction accident because "without an expert to explain the routine practices and acceptable conditions at a closed construction site, where trade persons are trained to work in and around precarious conditions, the jury would be left to speculate as to the standard of care"); *Woods v. Prices Corner Shopping Ctr. Merchants Ass'n.*, 541 A.2d 574, 578 (Del. Super. 1988) (holding that accumulated snow and ice must be removed within a "reasonable time", to be decided "as would any question of fact"); *but see Vandiest v. Santiago*, 2004 WL 3030014, at *7 (Del Super. Dec. 9, 2004) (finding that a property manager in a slip and fall case was not a professional necessitating an expert witness); *Spencer v. Wal-Mart Stores East, LP*, 930 A.2d 881 (Del. 2007) (noting that an expert was not required to show that melting snow can create ice); *Brown v. Dollar Tree Stores*, 2009 WL 5177162, at *3 (Del. Super. Dec. 9, 2009) (finding that an allegedly defective mop was within the "narrow category" of cases where an expert is not required to show a product defect because "the design of a mop is within the scope of common knowledge and jurors can understand how this mop was designed and used"); *Hazel v. Delaware Supermarkets, Inc.*, 953 A.2d 705, 711 (Del. 2008) (finding that a plausible negligent explanation is enough to prevent summary judgment and that an expert is not required for a slip on a wet floor); *Small v. Super Fresh Food Markets, Inc.*, 2010 WL 530071, at *4 (Del. Super. Feb. 12, 2010) ("although an expert may indeed be 'helpful,' expert testimony is not required in a grocery store slip and fall case" because a grocer is not a professional)).

a principle analogous to the rule of evidence allowing expert opinion testimony if: "The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."[33] In other words, if the design and manufacture of a product requires scientific, technical, or other specialized knowledge not generally within the scope of common knowledge of ordinary jurors, expert testimony is necessary to establish the standard of care for the manufacture of that product and whether that standard was breached.

This Court recently had occasion to apply that principle. *Miller v. Leidos, Inc.* involved a plaintiff, David Miller ("Miller"), who was injured when a boiler he was working on at the National Science Foundation's McMurdo Station in Antarctica exploded.[34] The boiler was designed, manufactured and sold by Bosch Thermotechnology Corp. ("Bosch") to Lockheed Martin IS&GS.[35] Leidos Inc. installed the boiler in Antarctica.[36] Shortly after installation, a non-party replaced the boiler's original electronic controller with a programmable Honeywell controller.[37] Someone failed to restart the boiler and six days later when Miller tried

---

[33] DRE 702(a).
[34] 2024 WL 4534135, at *1 (Del. Super. Ct. Oct. 21, 2024).
[34] *Id.*
[35] *Id.*
[36] *Id.*
[37] *Id.*

to restart it by cycling the boiler on and off multiple times, it exploded.[38]  Experts provided multiple opinions regarding the cause of the explosion, but none opined that Bosch was negligent or that the boiler was defectively designed or manufactured by Bosch.[39]  Bosch moved for summary judgment on Miller's negligence claim arguing, *inter alia*, that Miller failed to offer an expert opinion as to whether Bosch breached its standard of care in a matter involving sophisticated technology.[40]  Similar to Cumberland, Miller maintained that expert testimony was not required to establish the standard of care '"when a layman,  exercising his common sense, is perfectly competent to determine whether there was negligence.'"[41]  In granting summary judgment for Bosch, the Court held, "The case against Bosch is one relating to the design and manufacture of the Boiler. Expert testimony is necessary on the standard of care and whether the standard of care was breached in a technical case like this."[42]  The Court further held that "A Plaintiff must establish the standard of care through expert testimony when that standard requires resorting to technical or complex principles."[43]

---

[38] *Id.*
[39] *Id.* at *2.
[40] *Id.*
[41] *Id.* at *3.
[42] *Id.* at *4.
[43] *Id.*

Turning to this case, it is clear that, due to the technical and complex process of designing and manufacturing bathroom fans, Cumberland must provide expert testimony on the standard of care a manufacturer of bathroom fans must meet in order to determine whether the Defendants were negligent. Cumberland must also provide expert testimony that the standard of care was breached. The Court finds that it has failed to meet that burden. Neither of Cumberland's experts addresses those issues. At best they establish the product was defective in causing the fire. But, a defective product does not establish negligence.[44] Accordingly, the Defendants' Motion for Summary Judgment is **GRANTED.**

Because the Court grants the Defendants Motion for Summary Judgment, all motions *in limine* are **MOOT**.

## VI. CONCLUSION

Therefore, for the reasons set forth above, Defendants Broan-Nutone, LLC's and Jakel Motors, Inc.'s Motion for Summary Judgment is **GRANTED.** Defendants Broan-Nutone, LLC's and Jakel Motors, Inc.'s Motion in Limine to Exclude Evidence of Other Bathroom Fan Fires is **MOOT.** Defendants Broan-Nutone, LLC's and Jakel Motors, Inc.'s Motion in Limine to Exclude Christopher Graham from Testifying About Alternate Bathroom Fan Designs is **MOOT.** Plaintiffs' Motion in Limine to Preclude Evidence that the Fan was Not the Subject of Recall

---

[44] *See, McLoughlin,* at *10.

is **MOOT.** Plaintiffs' Motion in Limine Requesting a Jury Instruction on the Doctrine of *Res Ipsa Loquitor* is **MOOT.**

**IT IS SO ORDERED.**

/s/ *Ferris W. Wharton*
Ferris W. Wharton, J.